UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOHNNIE FLANAGAN, LAURA CHAPMAN,
individually and on behalf of other persons
similarly situated,

                            Plaintiffs,

     v.

PUBLIC PARTNERSHIPS, LLC,

                            Defendant.

Index No.

**COLLECTIVE AND
CLASS ACTION
COMPLAINT**

**Jury Trial Demanded**

Plaintiffs JOHNNIE FLANAGAN and LAURA CHAPMAN, individually and on behalf of themselves and all others similarly situated, by and through their attorney, Poricanin Law P.C., upon personal knowledge as to themselves and upon information and belief as to the others, file this Complaint against Defendant PUBLIC PARTNERSHIPS, LLC ("PPL") (hereinafter "Defendant" or "PPL") and allege as follows:

## PRELIMINARY STATEMENT

1.      This action is brought pursuant to the Fair Labor Standards Act 29 U.S.C. §§ 206 and 207, *et. seq.* (hereinafter "FLSA"), New York Labor Law §§ 190, 191, 195, 663, 650 and 651 *et seq.* (hereinafter the "NYLL") and New York Codes, Rules, and Regulations §§ 142-2.1, 142-2.2, 142.2-3, 142-2.4, 142-2.10, 142-2.14 (hereinafter the "NYCRR"), to recover unpaid minimum wages, unpaid overtime compensation, unpaid spread of hours, unpaid call-in pay, unpaid split shift pay, unpaid bonuses as an earned wage, and damages related to untimely wage payments and violations of the New York Wage Theft Prevention Act.

2.      Plaintiffs are current employees of Defendant who work as direct care home care workers, providing personal care services to Defendant's patients, called "the

1

Consumers," in a popular Medicaid-funded New York home care program called the "consumer directed personal assistance program" ("CDPAP").

3.      Defendant is a Delaware entity that has been designated by the New York State Department of Health ("NYDOH") to be a "fiscal intermediary" and perform certain joint employer and administrative functions for the CDPAP.

4.      Along with the Consumers, a fiscal intermediary is the joint employer of personal assistants like the Plaintiffs and similarly situated employees.

5.      Plaintiffs and similarly situated employees of Defendant have not been paid for all work hours that they performed as employees of Defendant, they have not been paid accurately for all work hours since becoming employed by PPL, and Defendant has engaged in a policy and practice of rejecting for wage payment legitimate work hours, failing to pay minimum wages, overtime compensation, call-in pay, split shift pay, and spread of hours pay. Defendant has also failed to pay the Plaintiffs and similarly situated employees a recruitment bonus as an earned wage. Defendant has failed to comply with the notice and pay transparency requirements of the New York Wage Theft Prevention Act. Further, Defendant has failed to comply with timely wage payment laws under NYLL.

6.      Defendant has engaged in these practices knowingly.

7.      Plaintiffs have initiated this action on behalf of themselves and hundreds of thousands other personal assistants to recover compensation that they are entitled to under federal and State law including minimum wages, overtime wages, spread of hours pay, call-in pay, split shift pay, as well as damages related to Defendant's untimely payments and violations of the Wage Theft Prevention Act, plus interest, liquidated damages, attorneys' fees, and costs. Plaintiffs seek an order compelling Defendant to comply with the FLSA and NYLL.

2

## THE PARTIES

8.    Plaintiff LAURA CHAPMAN is an individual who is currently a resident of Danville, New York, and became employed by PPL as a Personal Assistant on or about March 1, 2025.  Plaintiff Chapman's written consent to join this action pursuant to 29 U.S.C. § 216(b) is attached hereto as **Exhibit A**.

9.    Plaintiff JOHNNIE FLANAGAN is an individual who is currently a resident of Henrietta, New York, and became employed by PPL as a Personal Assistant on or about March 1, 2025.  Plaintiff FLANAGAN's written consent to join this action pursuant to 29 U.S.C. § 216(b) is attached hereto as **Exhibit B**.

10.    Defendant PPL is a limited liability company organized under the laws of the State of Delaware.  At all times stated herein, Defendant is and has been an enterprise within the meaning of 29 U.S.C. § 203(r).

11.    At all the times stated herein, Defendant is and has been an employer of the Plaintiffs and similarly situated personal assistants, within the meaning of  the NYLL and the FLSA.

12.    At all times stated herein, Defendant has been engaged in commerce or in the production of goods or services for commerce within the meaning of 29 U.S.C. § 203(s)(1), and has employees engaged in commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in commerce by any person, and in that said enterprises have and have had an annual gross volume of sale made or business done in excess of $500,000.

3

13.     At all times hereinafter mentioned, Plaintiffs were employed to provide personal care in households and were individual employees of PPL engaged in commerce as required by 29 U.S.C. § 207 and as defined by 29 U.S.C. § 202(a).

## FACTUAL BACKGROUND

14.     As part of the State's final budget that was passed in April 2024, New York Social Services Law 365-f was amended to re-define which entity can serve as a "fiscal intermediary" in the New York State CDPAP (the "SSL Amendment").

15.     Prior to the adoption of the SSL Amendment, there were approximately 650 distinct businesses auhorized by NYDOH to operate as a "fiscal intermediary" for New York's CDPAP program.

16.     In or around April 1, 2024, there were  believed to be  approximately 250,000 Medicaid beneficiaries (the Consumers), receiving personal care services and care through the CDPAP.

17.     As of April 1, 2024, upon information and belief, approximately 350,000 personal assistants were employed by their respective fiscal intermediaries across New York State in the CDPAP.

18.     In accordance with the SSL Amendment, **effective April 1, 2025**, only one entity would be allowed to serve as a fiscal intermediary in New York State for the entire CDPAP (the "Single FI").  This meant that all of  approximately 650 fiscal intermediaries that were operating in New York State prior to the SSL Amendment's enactment would be closed, and all consumers receiving services in CDPAP (and their personal assistants from those fiscal intermediaries) would need to transition their care to the Single FI.

4

19.    Per the SSL Amendment, the Single FI would be selected by the New York State Department of Health following a competitive bidding application process. The SSL Amendment further stated that the Single FI would need to be an entity with experience working as a Single FI in a state **other than** New York.

20.    PPL applied to New York State Department of Health pursuant to the bid process to be the Single FI.

21.    PPL was selected by the New York State Department of Health to be the Single FI sometime in the fall of 2024.

22.    Upon information and belief, PPL entered into a contract with New York State Department of Health to serve as a Single FI for New York State (the "Contract") sometime in December 2024. In the Contract, PPL affirmatively agreed to be the joint employer of the personal assistants who perform services in CDPAP for purposes of federal and State wage and hour laws.

23.    As a fiscal intermediary, pursuant to the Contract and Department of Health regulations, PPL is required to perform certain functions and responsibilities as a fiscal intermediary:

> (i) processing each consumer directed personal assistant's wages and benefits including establishing the amount of each assistant's wages; processing all income tax and other required wage withholdings; and complying with worker's compensation, disability and unemployment insurance requirements;
> (ii) ensuring that the health status of each consumer directed personal assistant is assessed prior to service delivery pursuant to 10 NYCRR section 766.11(c) and (d) or any successor regulation;
> (iii) maintaining personnel records for each consumer directed personal assistant, including time sheets and other documentation needed for wages and benefit processing and a copy of the medical documentation required pursuant to 10 NYCRR section 766.11(c) and (d) or any successor regulation;
> (iv) maintaining records for each consumer including copies of the social services district's authorization or reauthorization;

(v) monitoring the consumer's or, if applicable, the consumer's designated representative's continuing ability to fulfill the consumer's responsibilities under the program and promptly notifying the social services district of any circumstance that may affect the consumer's or, if applicable, the consumer's designated representative's ability to fulfill such responsibilities;
(vi) complying with the department's regulations at 18 NYCRR section 504.3, or any successor regulation, that specify the responsibilities of providers enrolled in the medical assistance program;
(vii) entering into a contract with the social services district for the provision of fiscal intermediary services; and
(viii) entering into a department approved memorandum of understanding with the consumer that describes the parties' responsibilities under the consumer directed personal assistance program.
(2) Fiscal intermediaries are not responsible for fulfilling responsibilities of the consumer or, if applicable, the consumer's designated representative.
Nothing in this section shall diminish, however, the fiscal intermediary's failure to exercise reasonable care in properly carrying out its responsibilities under the program.

*See* 18 NYCRR 505.28.

24.    The obligations of PPL in its performance of the Single FI duties, per the Contract and the applicable regulations, render PPL an employer of the personal assistants for purposes of the NYLL and FLSA.

25.    Conversely, the obligations of the Consumer in the CDPAP are:

(1) managing the plan of care including recruiting and hiring a sufficient number of individuals who meet the definition of consumer directed personal assistant, as set forth in subdivision (b) of this section, to provide authorized services that are included on the consumer's plan of care; training, supervising and scheduling each assistant; terminating the assistant's employment; and assuring that each consumer directed personal assistant competently and safely performs the personal care services, home health aide services and skilled nursing tasks that are included on the consumer's plan of care;
(2) timely notifying the social services district of any changes in the consumer's medical condition or social circumstances including, but not limited to, any hospitalization of the consumer or change in the consumer's address, telephone number or employment;
(3) timely notifying the fiscal intermediary of any changes in the employment status of each consumer directed personal assistant;
(4) attesting to the accuracy of each consumer directed personal assistant's time sheets;

6

(5) transmitting the consumer directed personal assistant's time sheets to the fiscal intermediary according to its procedures;

(6) timely distributing each consumer directed personal assistant's paycheck, if needed;

(7) arranging and scheduling substitute coverage when a consumer directed personal assistant is temporarily unavailable for any reason; and

(8) entering into a department approved memorandum of understanding with the fiscal intermediary and with the social services district that describes the parties' responsibilities under the consumer directed personal assistance program.

*See* 18 NYCRR 505.28.

26.    In preparation for the statutory implementation of the Single FI program in New York by April 1, **2025** deadline, sometime in December 2024, the Department of Health and PPL began the transition of 250,000 consumers and 350,000 personal assistants from their current fiscal intermediaries to the Single FI, PPL.

27.    Personal assistants were eligible and did begin to enroll to be employees of PPL in January 2025. Newly hired personal assistants received and signed an Offer Letter from PPL, titled the "Personal Assistant Agreement" (the "Agreement" or "Offer Letter"). In the Offer Letter, the Personal Assistant agreed to PPL's "General Rules." **See Exhibit C.**

28.    One of the General Rules states: "When working as a [personal assistant], I have two employers: The consumer (or their DR) is my employer; Public Partnerships LLC (PPL) is also my employer. This arrangement is often called 'joint' employment."

29.    Upon completion of the employment application with PPL, all personal assistants received a boilerplate welcome offer letter which states, "Congratulations! We are happy to offer you a Personal Assistant job with Public Partnerships LLC (PPL)."

30.    Defendant's offer letter to personal assistants further states that "please note that your employment with PPL is 'at-will' which means that either you, the person you work for, or PPL may end your employment at any time and for any reason."

31.     Defendant's offer letter concludes with the statement, "Please sign the Employee Acknowledgment below to accept our offer of employment. We're thrilled to have you joining the team."

32.     Upon information and belief, no personal assistant signed an independent contract or a services agreement with PPL.

33.     Upon information and belief, any and all documents published and issued by PPL to all personal assistants in the CDPAP referred to the personal assistants as employees (not any other non-employee status), welcomed the personal assistants to their "job" with PPL, and referred to the personal assistants' status with PPL as "employment" (instead of some other non-employment status, such as "contract" or "engagement").

34.     Upon commencing employment with Defendant, Plaintiffs and similarly situated employees were notified that they would only be paid for hours of work that were pre-authorized by the Consumer's insurance company, and that any hours worked beyond such pre-authorized amounts would not be compensated. They were further informed that overtime hours would not be paid, regardless of whether those hours were worked. Upon receipt of their initial paychecks, Plaintiffs and similarly situated employees discovered that they were not compensated for all hours of labor they had actually performed — even though such hours were recorded and reported to Defendant.

35.     Under the CDPAP reimbursement structure in New York State, the New York State Department of Health distributes Medicaid funds to managed long-term care plans ("MLTCs") and local Departments of Social Services ("DSSs"), which in turn reimburse fiscal intermediaries for each hour of personal assistant service authorized for a Consumer. These reimbursement payments are made at a fixed, per-hour rate — known as the "all-in" or

"blended" rate — and are meant to cover not only the personal assistant's wages but also payroll taxes, unemployment and workers' compensation insurance, and the administrative fee for the fiscal intermediary. Accordingly, for every authorized hour of CDPAP service, the fiscal intermediary receives an hourly payment (the "reimbursement"), for every hour of care authorized for its Consumers.

36.     From this hourly reimbursement rate that is paid by MLTCs to fiscal intermediaries — for example, $24.00 per hour in some regions — the vast majority of funds are earmarked for the personal assistant's wages and mandated employer costs. If the minimum wage in the region is $18.10, for example, the fiscal intermediary will pass down the $18.10 as a wage to the employee, and apply the reset of the reimbursement to cover payroll taxes, statutory benefits, and its office overheard. Any "leftover" from the reimbursement is profit.

37.     The lump sum reimbursement rate paid to a fiscal intermediary is the same, regardless of whether the reimbursement is being paid for regular hours or overtime hours (even though from a labor standpoing, the overtime work "costs" the employer more because the overtime wage is higher than the regular hour wage).

38.     Because the MLTCs and the DSSs do not reimburse for overtime hours, PPL counseled and advised Consumers not to schedule their Personal Assistants to work any overtime work.  However, per Social Services Law 365-f, a fiscal intermediary must not schedule or be involved in the scheduling of a personal assistant's work hours.

39.     Hours worked by personal assistants are tied to each Consumer's Plan of Care and initially authorized by the Consumer's MLTC or DSS representative.  In the CDPAP program, a Consumer's Plan of Care is a document that outlines the specific types and number of hours of personal care services the Consumer is authorized to receive on a weekly or daily basis

9

from his personal assistants. This Plan of Care is developed and issued by the Consumer's assigned managed long-term care plan ("MLTC") or local Department of Social Services ("DSS") following a clinical assessment of the Consumer's medical, functional, and social needs. Typically, a nurse assessor or care manager employed by the MLTC performs an in-home evaluation to determine the extent of assistance the Consumer requires. Based on this evaluation, the MLTC or DSS determines the number of care hours the Consumer is entitled to receive and formalizes that determination in the Plan of Care.

40.     The Plan of Care serves as the basis for Medicaid reimbursement — that is, it authorizes the fiscal intermediary, such as Defendant, to bill Medicaid (via the MLTC or DSS) for each hour of care provided under that plan.

41.     Because PPL is only reimbursed for "authorized" hours of care – as per the Plan of Care – PPL has a strict policy that a personal assistant can only work the number of hours that are authorized in the Consumer's plan of care, and if additional hours are worked, PPL will not pay for such hours because it will not receive reimbursement for those "un-authorized" hours."

42.     Pursuant to the offer letter signed and accepted by personal assistants, one of the other General Rules states as follows: "There are strict rules about how and when I can perform services for my consumer: (1) I am never allowed to work more hours than is on my work schedule."

43.     PPL told the Named Plaintiffs and other similarly situated employees that they would only be paid for the "authorized hours," irrespective of how much personal assistants actually worked, and that any attempt to report hours in excess of the authorized hours would constitute fraud that could be punishable by criminal and civil action.   Thus, even if PPL's co-

10

employer, the Consumer, needed assistance or other care beyond what the MLTC authorized, the Plaintiffs were told that they were not allowed to work such Consumer-scheduled hours if it would exceed the "authorized hours allowance" for the Consumer per his/her Plan of Care.

44.     Plaintiffs and other similarly situated employees were told that Consumers would need to schedule the personal assistants in a way to avoid overtime.  For example, a Consumer approved for 60 hours of care per week, and who had 3 personal assistants assigned to that consumer, would need to allocate and spread out those 60 hours among the 2 or 3 personal assistants to ensure that not one of the employees was working in excess of 40 hours per week, even though the Consumer did have an authorization for 60 hours of weekly care.

45.     At all times relevant to this Complaint, Plaintiffs and similarly situated employees of Consumers in CDPAP submitted their timesheets and electronic visit clock-in and out reports to PPL but, when and if they were paid by PPL, Plaintiffs and similarly situated employees observed that not all of their reported work hours were paid.

46.     Defendant maintains a policy and system of deducting and not paying for reported work hours unless the work hours conform to billable hours.

47.     Further, ss a result of PPL's restrictions on work hours and what could be reported as work time to PPL, including PPL's statements that any over-reporting of hours could constitute fraud, Plaintiffs and other similarly situated employees of PPL were prevented from reporting all hours of work and often worked off-the-clock to provide care to their sick and disabled Consumers.

48.     Defendant uses a system to track work hours that is often broken or nonfunctioning, preventing Plaintiffs and similarly situated individuals from reporting their hours of work.

49.    The offer letter that Plaintiffs and other similarly situated employees signed with PPL states that "There are strict rules about how and when I must report my work time; … If I cannot use Time4Care[1], I must use another method to report my time, which may include using the consumer's landline or submitting paper timesheets. My consumer or PPL will provide more information about this if needed."

50.    Plaintiff CHAPMAN typically works 12-hour shifts caring for her Consumer.  She has not been paid for all of her hours despite following PPL's process for submitting her work time information.  Chapman's workday "spread" exceeds 10 hours.  Chapman has not been paid spread of hours in accordance with New York Labor Law.  Chapman has not been paid call-in pay.

51.    Plaintiff FLANAGAN typically works between 54-60 hours per week for her Consumer.  The "spread" of her workday sometimes exceeds 10 hours.  Flanagan has not been paid for all of her hours despite following PPL's procedures for reporting her hours of work.  Flangan has not been paid the accurate spread of hours or split shift pay.  Flanagan has not been paid a call-in pay.

52.    Despite submitting paper timesheets when encountering difficulties with using PPL's Time4Care technology application, Plaintiffs and other similarly situated employees have not been paid their full wages for authorized hours of work.

53.    PPL's offer letter states that "I must report my hours each day that I work. I am not allowed to report my hours late."  Plaintiffs and similarly situated employees understood that this meant they would only be paid for reported hours of work, if they were

---

[1] Time4Care is PPL's consumer care/treatment tracking mobile application.  Time4Care is not a labor-driven software.  Rather, the emphasis is to capture the location of when the shift started and ended, in a geo-fencing manner, to confirm that the Personal Assistant as in the consumer's home.

reported on the day of work.  But, as understood by Plaintiffs, if they "missed the daily deadline" of submitting their hours through Time4Care, then they would not be able to report and receive pay for their wages.  Based on the written policy of defendant, Plaintiff and similarly situated employees were stifled and intimidated from reporting their complete work hours.

54.    As observed by Plaintiffs and similarly situated personal assistants, the Time4Care application was also often broken or not functioning or "down."

55.    For employees who were not been able to utilize the Time4Care technology to log their hours electronically, PPL instructed such employees to use a paper time sheet and submit it via email.  However, Plaintiffs and other similarly situated personal assistants encountered issues submitting the paper time sheet because the PPL inbox that they were directed to use for submitting the paper timesheets was often returning messages that it was full and could not accept email.  **See Exhibit D.**

56.    The offer letter signed by the personal assistant states, as another General Rule, "I must notify PPL right away if there are error messages on Time4Care or on PPL's web portal." Despite receiving error messages when using the application, or not being able to use the application for various technical reasons, and notifying PPL through the phone system or its email system, Plaintiffs and other similarly situated employees never received a call back from PPL to assist them with the application challenges. Social media groups and chat boards are full of people complaining of the same issues. **See Exhibit E.**

57.    Upon information and belief, Defendant PPL has failed to implement and use an appropriate payroll timekeeping system designed to comply with federal and state wage and hour laws.  Instead, PPL relies exclusively on electronic visit verification ("EVV") technology — specifically, a mobile application called Time4Care — to track, verify, and

process hours of work for payroll purposes.  EVV systems like Time4Care are required to be used by home care providers under federal Medicaid law to prevent fraud in home care services. EVV systems "fight fraud" by verifying the time and location of home care services delivered. These EVV systems are designed to confirm that the personal assistant clocked in and out from the Consumer's home during the authorized service hours.  However, EVV systems were not developed to serve as wage and hour timekeeping tools and do not comply with labor law standards for recording compensable work time or ensuring accurate payroll.

58.    Upon information and belief, PPL uses Time4Care technology to comply with its federal and State EVV obligations.

59.    Hours are verified for billing in an EVV system, and then sent for processing and payment by a MLTCs and DSSs.  Thus, EVV was designed to address the healthcare laws obligations for home care providers and while an EVV technology does have some timekeeping functions, the manner in which those hours and work time data points are collected and processed in a EVV system varies significantly from how a payroll system would track work time.

60.    For example, a EVV system will identify unauthorized work hours and "auto delete" those hours or "flag" them for deletion because only those hours specifically authorized in a plan of care for a patient are allowed to be billed.  Thus, a EVV system will shave unauthorized hours off of the report to ensure that those unauthorized hours are not billed to Medicaid.  If a provider covered by the EVV regulations is relying strictly on the EVV time records to calculate the work hours and, consequently, the wages owed to employees, the system will automatically shave off what may have been actual work hours performed by a personal

14

assistant per the directions of PPL's joint employer, the Consumer (or hours that were legitimately worked by a personal assistant for other lawful reasons).

61.     Plaintiffs and similarly situated personal assistants employed by PPL regularly saw their EVV reports delete, add, and remove work hours from the report, as if the system was broken. However, Plaintiffs and similarly situated workers used the trained, PPL-approved processes to utilize PPL's EVV system and track their work time.

62.     Upon information and belief, one problem with Time4Care is that it uses automated and inappropriate rounding rules that inflate or distort reported time entries. For example, if a personal assistant clocks out at 9:02 AM for a scheduled 9:00 AM shift end, Time4Care may round the time to 9:15 AM and count those extra 13 minutes as worked. However, Time4Care simultaneously reduces the Consumer's available authorized care hours by that rounded amount. Later in the same work week, if the personal assistant works an additional 13 minutes, the system rejects those 13 minutes as ineligible for payment because the system already "credited" the personal assistant for those 13 minutes earlier in the workweek (when the system rouded up). In effect, the system creates time entries that negate actual work time Plaintiffs and similarly situated employees have regularly experienced "time shaving" due to this unlawful use of rounding and time allocation practices in the EVV system.

63.     As one illustrative example, Personal Assistant "John" is assigned to a Consumer authorized for six hours of care may clock out at 9:02 AM instead of 9:00 AM. The Time4Care system rounds the time forward to 9:15 AM and treats those 13 minutes as work time. However, if another personal assistant of the Consumer ("Mary") works an extra 13 minutes in the same week as John, the EVV system will not "pay" those 13 minutes to Personal Assistant Mary because it will look at the Consumer's total weekly hours and deem those 13

miutes to have already been paid for Consumers care (but the 13 minutes were paid to the wrong employee!). This practice unlawfully erodes the pool of payable hours and causes systematic underpayment of wages, in violation of federal and state law.

64. Beyond rounding issues, PPL's use of Time4Care improperly conditions wage payments on whether the total hours worked match exactly the number of hours authorized under the Consumer's Plan of Care. If a personal assistant reports more time than what is pre-authorized — even if the additional time was actually worked and needed by the Consumer — PPL refuses to process those hours for payroll. In this way, Defendant unlawfully conflates Medicaid billing rules with wage law obligations, treating any unbilled or unreimbursed time as uncompensated — regardless of whether the labor was performed.

65. As a direct result of PPL's improper use of EVV technology as a substitute for a compliant payroll and timekeeping system, Plaintiffs and similarly situated employees have been systematically deprived of wages for hours of work performed. The failure to maintain accurate payroll records, the misuse of rounding, the denial of hours worked beyond authorized limits, and the technical limitations of Time4Care have all contributed to widespread wage violations.

66. Upon information and belief, Defendant has violated provisions of the FLSA and NYLL, as well as applicable regulations by maintaining a policy and practice of "shaving hours" from the owed wages for Plaintiffs and similarly situated employees, not paying for minimum wage and overtime, failing to pay the bonus as an earned wage, failing to pay employees on a timely basis, and failing to pay split shift pay, call-in pay, and spread of hours pay to employees.

67.    Defendant failed to maintain and preserve records of the hours Plaintiffs worked as required by NYLL.

68.    Defendant failed to provide and maintain the required notices and wage statements in accordance with the New York Wage Theft Prevention Act.

69.    Plaintiffs have initiated this action seeking minimum wages, overtime compensation, split shift, call-in pay, spread of hours compensation, and a contractually promised bonus as an earned wage, as well as damages arising from Defendant's breach of contract, and Defendant's violations of timely wage payment laws and the Wage Theft Prevention Act, plus interest, liquidated damages, attorneys' fees, and costs. These claims arise from Defendant's systemic wage violations against Plaintiffs and similarly situated employees.

## JURISDICTION

70.    This Court has subject matter jurisdiction pursuant to 8 U.S.C. § 1331, 1332, and 1367, and by 29 U.S.C. § 201, et. seq. 43. Defendant is subject to personal jurisdiction in New York. This Court has general jurisdiction over Defendant, as the Defendant's headquarters and principal place of business are located in Latham, New York.

71.    This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## VENUE

72.    Venue for this action in the Western District of New York under 28 U.S.C. § 1391(b) is appropriate because a substantial part of the events or omissions giving rise to the claims occurred in the Western District of New York.

17

## FLSA COLLECTIVE ACTION ALLEGATIONS

73.     Plaintiffs reallege and incorporate by reference all previous paragraphs as if they were set forth again herein.

74.     Plaintiffs bring the First Cause of Action, pursuant to the FLSA, 29 U.S.C.§ 206(a), on behalf of themselves and FLSA Collective Members.

75.     Plaintiffs bring the Second Cause of Action, pursuant to the FLSA, 29 U.S.C. § 207, on behalf of themselves and FLSA Collective Members.

76.    The FLSA Collective Members are defined to include:

> All current employees of Defendant who work and have worked as personal assistants in all counties of New York State, excluding Westchester County, Nassau County, Suffolk County and New York City, during the time period commencing on March 1, 2025 until a resolution of this action (referred to herein as the "Collective Members").

77.     As part of its regular business practice, Defendant has intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiffs and Collective Members. This policy and pattern or practice includes, but is not limited to:

> a.  willfully failing to pay Plaintiffs and Collective Members minimum wage and overtime wages for all of the hours that they worked; and
> b.  willfully failing to capture and record all of the work time that personal assistants, including Plaintiffs and Collective Members, have worked for Defendant, resulting in nonpayment of earned wages.

78.     Defendant is aware or should have been aware that the FLSA requires Defendant to accurately track and record and pay non-exempt hourly employees, such as the Collective Members' minimum wage and overtime premiums for hours worked in excess of 40 hours per workweek.

18

79.     Defendant is aware or should have been aware that the FLSA prohibits employers from shaving or auto-deducting work hours reported by employees for self-help reasons, such as the ability to bill for those work hours.

80.     Defendant's unlawful conduct has been widespread, repeated, and consistent.

81.     The Collective Members are known to Defendant, are readily identifiable, and can be located through Defendant's records.

82.     Court-authorized notices should be issued to Collective Members to provide them with an opportunity to learn about this lawsuit and submit a Consent to Join form pursuant to 29 U.S.C. § 216(b) if they wish to join it.

## NEW YORK CLASS ALLEGATIONS

83.     Plaintiffs reallege and incorporate by reference all previous paragraphs as if they were set forth again herein.

84.     This action is brought on behalf of Plaintiffs and a class consisting of similarly situated employees who worked for Defendant as personal assistants in CDPAP starting with their employment with PPL in or about March 1, 2025 (the "Class Members").

85.     Plaintiffs and Class Members are all victims of the Defendant's common policy and practice of violating the NYLL by:

        (1)  failing to pay all minimum wages owed to Plaintiffs and putative class members;

        (2)  failing to pay all overtime wages owed to Plaintiffs and putative class members;

        (3)  failing to pay call-in pay to Plaintiffs and putative class members;

        (4)  failing to pay split shift pay to Plaintiffs and putative class members;

19

(5)  failing to pay spread of hours pay to Plaintiffs and putative class members;

(6)  failing to provide the legally required wage statements and notices pursuant to the New York Wage Theft Prevention Act;

(7)  failing to pay all wages due to Plaintiffs and putative class members on a timely basis as required by New York Labor Law;

(8)  failing to pay all bonuses as earned wages to Plaintiffs and putative class members; and

(9)  auto-deducting and deleting reported work time from reported work hours and timesheet records resulting in underpayment of wages to employees.

(Collectively, the " Violated New York Labor Laws and Regulations").

86.    Defendant is aware or should have been aware of the NYLL requirements, due to the fact that the core responsibility of Defendant's services as a fiscal intermediary and as a contracting party with New York State under the Single FI Contract is payroll processing and benefits administration. *See* 18 NYCCRR 505.28.

87.    PPL's unlawful wage practices and violations are widespread, repeated, and consistent.

88.    The Class Members are easily ascertainable by Defendant. The number and identity of the putative Class Members, the timesheets, and payroll records are determinable from Defendant's records. For the purpose of notice and other purposes related to this action, Class Members' names and addresses are readily available from Defendant. Notice can be provided by means permissible under Rule 23.

*Numerosity*

89.    The size of the putative class is believed to be in excess of 40 employees.

90.    The number of putative Class Members are therefore too numerous to be individually joined in this lawsuit.

***Common Questions of Law and/or Fact***

91.     The questions of law and fact common to the Plaintiffs and Class Members predominate over any questions affecting only individual members.  These questions of law and fact include, but are not limited to: (1) whether Defendant failed to pay the statutory appropriate minimum wage; (2) whether Defendant failed to pay overtime wages, at the rate of one and one half times the regular rate of pay, for all hours worked in excess of forty (40) hours in any given week; (3) whether Defendant failed to pay spread of hours compensation, at one additional hour of pay, for all days during which the "spread" of employees' workday exceeded ten (10) hours; (4) whether Defendant failed to pay employees in a timely manner as required by New York Labor Law; (5) whether Defendant failed to pay split shift pay to Plaintiffs and Class Members for all days when the work hours of employeeswere not consecutive; (6) whether Defendant failed to provide legally required notices and wage statements to employees under the Wage Theft Prevention Act; (7) whether Defendant failed to pay call-in pay to all employees who – at the request or direction of Defendant – performed work for Defendant; (8) whether Defendant maintained accurate and complete records of work hours for employees; and (9) whether Defendant maintains an unlawful policy of shaving and deducting from pay all hours of work reportd by Plaintiffs and Class Members.

***Typicality***

92.     Plaintiffs' claims are typical of those claims which could be alleged by any Class Member, and the relief sought is typical of the relief which would be sought by each Class Member in separate actions.

21

93.     All Class Members were subject to the same practices of Defendant, as alleged herein, of failing to pay the appropriate minimum wage, overtime, failing to pay for off-the-clock work, failing to provide proper wage statements and notices, failing to pay earned wages on a timely basis, failing to pay for spread of hours, failing to pay for split shift, failing to pay for call-in pay, failing to pay bonuses as earned wages, and failing to maintain accurate time records of all hours worked.

94.     Plaintiffs and Class Members have all sustained similar types of damages as a result of Defendant's failure to comply with the NYLL.

95.     Plaintiffs and Class Members have all been injured in that they have been uncompensated or under-compensated due to Defendant's common policies, practices, and patterns of conduct.  Defendant's corporate-wide policies and practices affected all Class Members similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to each of the Class Members.

96.     Plaintiffs and Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

*Adequacy*

97.     Plaintiffs can fairly and adequately represent and protect the interests of the Class that they seek to represent because Plaintiffs' interests do not conflict with the interests of the Class Members.

98.     Plaintiffs are represented by counsel experienced and competent in wage and hour class action litigation.

*Superiority*

99.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Plaintiffs and Class Members lack the financial resources to adequately prosecute separate lawsuits against Defendant.

100.     Furthermore, the damages for each individual Plaintiff are small compared to the expense and burden of individualized prosecutions of this litigation.

101.     A class action will also prevent unduly duplicative litigation resulting from inconsistent judgments pertaining to Defendant's policies.

102.     Prosecuting and defending multiple actions would be impracticable.

103.     Managing a class action will not result in undue difficulties.  Defendant has been subject to wage and hour class action in other jurisdictions and is familiar with federal class action litigation defense.

**FIRST CAUSE OF ACTION**
**Fair Labor Standards Act -- Unpaid Minimum Wages**
**(Brought on behalf of Plaintiffs and Collective Members)**

104.     Plaintiffs reallege and incorporate by reference all previous paragraphs as if they were set forth again herein.

105.     Plaintiffs and Collective Members are or were employees of Defendant, and Defendant was Plaintiffs' and Collective Members' employer, within the meaning of the FLSA.  29 U.S.C. § 203.

106.     Since January 1, 2015, home care workers employed by third-party agencies or employers must be paid the minimum wage and overtime. 29 U.S.C. § 209; 29 C.F.R. § 552.109(a).

23

112.    The minimum wage provisions set forth in §§ 201 et seq. of the FLSA apply to Defendant.

115.    Defendant failed to pay Plaintiffs and Collective Members the federal minimum wages to which they were entitled under the FLSA by failing to accurately collect information about all hours worked, by depriving Plaintiffs and Collective Members of access to submit work hours, by not paying for all hours that Plaintiffs and Collective Members reported as hours of work, by maintaining a policy of only paying for "authorized" work hours, and by engaging in auto-deductionion or "shaving" of reported work hours.

116.    Defendant failed to keep, make, preserve, maintain, and furnish accurate records of time worked by Plaintiffs and Collective Members.

117.    Defendant's violations of the FLSA, as described herein, have been willful and intentional.  Defendant failed to make a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and Collective Members.

119.    As a result of Defendant's willful violations of the FLSA, Plaintiffs and Collective Members have suffered damages by being denied minimum wages in accordance with 29 U.S.C. §§ 201 et seq.

120.    As a result of the unlawful acts of Defendant, Plaintiffs and Collective Members have been deprived of minimum wage compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, pre-judgment interest, attorneys' fees, costs and other compensation pursuant to 29 U.S.C. §§ 201, et seq.

## SECOND CAUSE OF ACTION
### Fair Labor Standards Act – Unpaid Overtime Wages
### (Brought on behalf of Plaintiffs and Collective Members)

107.    Plaintiffs reallege and incorporate by reference all previous paragraphs as if they were set forth again herein.

108.    Plaintiffs and Class Members regularly worked more than 40 hours per week.

109.    Plaintiffs and Collective Members, having worked more than 40 hours per week, are entitled to FLSA mandated overtime compensation.

110.    Defendant has failed to pay Plaintiffs and Collective Members overtime wages at one and one-half times their regular rate of pay for each hour worked in excess of 40 per week, in violation of 29 U.S.C. § 207 by failing to accurately collect information about all hours worked, by depriving Plaintiffs and Collective Members of access to submit work hours, by not paying for all hours that Plaintiffs and Collective Members reported as hours of work, by maintaining a policy of only paying for "authorized" work hours, and by engaging in auto-deductionion or "shaving" of reported work hours.

111.    Defendant's failure to pay Plaintiffs and Collective Members lawful overtime wages is or was willful.

112.    Plaintiffs and Collective Members have suffered pecuniary losses and are entitled to full recovery pursuant to the FLSA.

## THIRD CAUSE OF ACTION
### New York Labor Law- Minimum Wage
### (Brought on behalf of Plaintiffs and Class Members)

113.    Plaintiffs reallege and incorporate by reference all previous paragraphs as if they were set forth again herein.

114.    At all times relevant to this action, Plaintiffs and Class Members are or were employees within the meaning of the NYLL, including but not limited to NYLL §§ 2 and 651.  Personal assistants are considered "home care workers" under New York Labor Law and New York Public Health Law §3614-f and have a different statutory minimum wage rate than workers in other industries in New York State.

115.    At all relevant times to this action, Defendant failed to pay Plaintiffs and Class Members the statutory minimum wage in violation of NYLL § 652, Public Health Law 3614-f, and 12 NYCRR § 142-2.1.

116.    NYLL § 663 provides that, "[i]f any employee is paid by his employer less than the wage to which he is entitled under the provisions of this article, he may recover in a civil action the amount of any such underpayments, together with costs and such reasonable attorney's fees."

117.    Defendant willfully, regularly, repeatedly and knowingly violated Plaintiffs' and Class Members' rights by failing to accurately collect information about all hours worked, by depriving Plaintiffs and Collective Members of access to submit work hours, by not paying for all hours that Plaintiffs and Collective Members reported as hours of work, by maintaining a policy of only paying for "authorized" work hours, and by engaging in auto-deductionion or "shaving" of reported work hours.

118.    By the foregoing reasons, Plaintiffs and Class Members are entitled to recover from Defendant their unpaid minimum wages, in an amount to be determined at trial, plus liquidated damages, interest, attorneys' fees, and costs.

**FOURTH CAUSE OF ACTION**
**New York Labor Law - Overtime**
**(Brought on behalf of Plaintiffs and Class Members)**

26

119.    Plaintiffs reallege and incorporate by reference all previous paragraphs as if they were set forth again herein.

120.    12 NYCRR §142-2.2 requires that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate."

121.    Plaintiffs and Class Members regularly worked more than 40 hours per week.

122.    Defendant failed to pay Plaintiffs and Class Members one and one- half times their hourly rate for all hours worked in excess of 40 per work week, in violation of NYLL by failing to accurately collect information about all hours worked, by depriving Plaintiffs and Collective Members of access to submit work hours, by not paying for all hours that Plaintiffs and Collective Members reported as hours of work, by maintaining a policy of only paying for "authorized" work hours, and by engaging in auto-deductionion or "shaving" of reported work hours.

123.    Defendant's failure to pay overtime compensation to Plaintiffs and Class Members of the putative class for work performed was willful.

124.    By the foregoing reasons, Defendant has violated NYLL § 663 and 12 NYCRR § 142-2.2 and is liable to Plaintiffs and Class Members in an amount to be determined at trial, plus liquidated damages, interest, attorneys' fees, and costs.

### FIFTH CAUSE OF ACTION
#### New York Labor Law -Spread of Hours
#### (Brought on behalf of Plaintiffs and Class Members)

125.    Plaintiffs reallege and incorporate by reference all previous paragraphs as if they were set forth again herein.

27

126.    12 NYCRR § 142-2.4 requires that "[a]n employee shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required in this Part for any day in which: (a) the spread of hours exceeds 10 hours[.]"

127.    Plaintiffs regularly worked a "spread" of more than 10 hours per day.

128.    At all times relevant to this action, Defendant failed to pay Plaintiffs and Class Members the appropriate spread of hours premium required by 12 NYCRR § 142-2.4 and Public Health Law 3614-f.

129.    Defendant's failure to pay Plaintiffs and Class Members spread of hours compensation for instances of "spreads" performed by Plaintiffs and other members of the putative class was willful.

130.    By the foregoing reasons, Defendant has violated 12 NYCRR § 142-2.4 and is liable to Plaintiffs and Class Members in an amount to be determined at trial, plus liquidated damages, interest, attorneys' fees, and costs.

### SIXTH CAUSE OF ACTION
### New York Labor Law - Split Shift
### (Brought on behalf of Plaintiffs and Class Members)

131.    Plaintiffs reallege and incorporate by reference all previous paragraphs as if they were set forth herein.

132.    12 NYCRR § 142-2.4 requires that "[a]n employee shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required in this Part for any day in which: (a) the spread of hours exceeds 10 hours; or (b) there is a split shift; or (c) both situations occur."

28

133.    At all times relevant to this action, Defendant failed to track and pay Plaintiffs and Class Members "split shift" pay required by 12 NYCRR § 142-2.4 and Public Health Law 3614-f.

134.    Defendant's failure to pay "split shift" compensation for work performed by Plaintiffs and Class Members in a day was willful.

135.    By the foregoing reasons, Defendant has violated 12 NYCRR § 142-2.4 and is liable to Plaintiffs and Class Members in an amount to be determined at trial, plus liquidated damages, interest, attorneys' fees, and costs.

**SEVENTH CAUSE OF ACTION**
**New York Labor Law – Failure to Pay on a Timely Basis**
**(Brought on behalf of Plaintiffs and Class Members)**

136.    Plaintiffs reallege and incorporate by reference all previous paragraphs as if they were set forth again herein.

137.    Pursuant to NYLL § 191 and the cases interpreting same, workers such as Plaintiffs and Class Members are entitled to be paid all their weekly wages "not later than seven calendar days after the end of the week in which the wages are earned."

138.    Defendant failed to pay Plaintiffs and Class Members all wages due within seven calendar days after the end of the week in which the wages were earned.

139.    Defendant's failure to comply with the NYLL caused Plaintiffs and Class Members to suffer loss of wages and interest thereon.

140.    Defendant's failure to comply with the NYLL was willful.

141.    Due to Defendant's violations of the NYLL, Plaintiffs and Class Members are entitled to recover from Defendant their unpaid wages, liquidated damages, reasonable

attorneys' fees, costs, and pre-judgment and post- judgment interest.

## EIGHTH CAUSE OF ACTION
### New York Labor Law – Wage Theft Prevention Act
### (Brought on behalf of Plaintiffs and Class Members)

142.    Plaintiffs reallege and incorporate by reference all previous paragraphs as if they were set forth again herein.

143.    The Wage Theft Prevention Act requires that a notice of pay rate (the "Notice of Pay Rate") be provided to any employee upon hire.  The New York Department of Labor publishes a form Notice of Pay Rate and requires employers to utilize its form or another format as long as that other-format contains all information that is in the Notice of Pay Rate.

144.    The Notice of Pay Rate statement was not provided to any personal assistant upon hire by PPL.  Instead, Defendant issued an offer letter to all newly hired personal assistants.  The offer letter did not contain all of the information required by the Notice of Pay Rate.

145.    The Wage Theft Prevention Act requires that the Notice of Pay Rate be provided to employee in his or her primary language, and the New York Department of Labor publishes the Notice of Pay Rate template form in English and several other languages on its website. If English is not the employee's primary language, then the employer is required to provide the Notice of Pay Rate to the employee in English and the employee's primary language (if the Department of Labor has published a template notice in that other language).

146.    Defendant failed to elicit information about the Plaintiffs' and Class Members' primary language and instead provided boilerplate offer letters to all hired personal assistants, purporting to be a Notice of Pay Rate, where the language pre-selected in the offer

30

letter template was English.  No separate, translated, other-language offer letter was provided to Plaintiffs and any other Class Member.

147.    Defendant did not provide Plaintiffs and other members of the putative class with the correct notices and/or statements required by N.Y. Lab. Law § 195.

148.    Defendant has failed to furnish to Plaintiffs and other members of the putative class the information required by NYLL §195(3) on each payday.

149.    Defendant was aware or should have been aware of its statutory obligation to provide such information to Plaintiffs and Class Members.

150.    Due to Defendant's violations of the Wage Theft Prevention Act (NYLL § l95(3)), Plaintiffs and Class Members are entitled to recover statutory damages from Defendant in the amount of $250.00 per day that the violation occurred, capped at $5,000.00 per employee affected, plus attorneys' fees and costs of this action.

**NINTH CAUSE OF ACTION**
**New York Labor Law – Call-In Pay**
**(Brought on behalf of Plaintiffs and Class Members)**

151.    Plaintiffs reallege and incorporate by reference all previous paragraphs as if they were set forth again herein.

152.    As a condition precedent of working as a personal assistant, Defendant is required to provide certain pre-employment training to the personal assistants in CDPAP and "orient" them as a new employee to Defendant's policies and procedures.

153.    Defendant provided such "new hire" training and onboarding on a remote basis using its technology platform.  Plaintiffs and Class Members were only paid for 25 minutes of such onboarding time and were not required or asked to record or report their actual work time spent in the onboarding.

154.    The call-in pay regulation at 12 NYCRR § 142-2.3 states that "employee who by request or permission of the employer reports for work on any day shall be paid for at least four hours, or the number of hours in the regularly scheduled shift, whichever is less, at the basic minimum hourly wage."

155.    Plaintiffs and Class Members were requested or permitted to log in remotely and complete their new hire orientation/training by Defendant, their employer.

156.    Defendant considered the training time to be work time, because Defendant paid Plaintiffs for 25 minutes of the onboarding time (even though the actual time spent in the training was not known to Defendant, because Defendant did not track or record this onboarding work time).

157.    Due to the challenges of utilizing Defendant's systems and technology platforms, Plaintiffs and Class Members spent more than 25 minutes being onboarded and completing all new hire paperwork and training for Defendant.

158.    Neither Plaintiffs nor any other Class Members were paid in accordance with the call-in pay regulation for the lesser of four (4) hours or the number of hours in their regularly scheduled shift.

159.    The time spent in training was not counted towards Plaintiffs' and Class Members weekly work hours, thereby depriving Plainitffs of minimum wage and overtime pay for actual time spent in training and onboarding.

160.    As a result of Defendant's violations of the NYCRR, Plaintiffs and Class Members are entitled to recover from Defendant their unpaid wages, reasonable attorneys' fees, costs, and pre-judgment and post- judgment interest.

## TENTH CAUSE OF ACTION
### New York Labor Law – Breach of Contract
### (Brought on behalf of Plaintiffs and Class Members)

161.    Plaintiffs reallege and incorporate by reference all previous paragraphs as if they were set forth again herein.

162.    In advance of Defendant assuming Single FI operations in New York State, Defendant advertised that it would pay $100 to any personal assistant who "signed up with the Defendant" as an employee by March 28, 2025. In the advertisement, there was no deadline on when such bonuses, once earned, would be paid by Defendant. **See Exhibit F.**

163.    Plaintiffs and Class Members signed up with the Defendant by the March 28, 2025 deadline.

164.    Plaintiffs and Class Members have not been paid the promised onboarding bonus of $100.

165.    As a result of Defendant's violations of New York's Labor Laws and common law principles related to payment of wages and bonuses as earned wages, Plaintiffs and Class Members are entitled to recover from Defendant their unpaid bonuses as earned wages, reasonable attorneys' fees, costs, and pre-judgment and post- judgment interest.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs, individually and on behalf of all other persons similarly situated who are employed by Defendant, demand final judgment against PUBLIC PARTNERSHIPS, LLC ("PPL") as follows:

(a) Designation of this action as a collective action on behalf of Collective Members (asserting FLSA claims and state claims) and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members

of the FLSA opt-in collective, apprising them of the pendency of this action, and permitting them to assert timely claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

(b) Certification of this case as a class action pursuant to Rule 23;

(c) Designation of Plaintiffs as representatives of the Class they seek to represent;

(d) Designation of Plaintiffs' counsel of record as Class Counsel;

(e) An award of damages, including unpaid minimum wage and overtime, liquidated damages, interest and attorneys' fees;

(f) Declaring Defendant's conduct complained of herein to be in violation of Plaintiffs' rights under the FLSA and NYLL;

(g) Implementation of a payroll and labor-compliant system for tracking and recording work hours of Plainitiffs and Class Members;

(h) Awarding Plaintiffs spread of hours pay, call-in pay, and split shift pay under the NYLL;

(i) Awarding Plaintiffs damages based on untimely payment of wages;

(j) Awarding Plaintiffs damages due to violations under the Wage Theft Prevention Act;

(k) Awarding Plaintiffs liquidated damages;

(l) Appropriate equitable and injunctive relief to remedy violations, including but not limited to ordering Defendant to cease and correct its unlawful practices

(m) Awarding Plaintiffs pre-judgment and post-judgment interest;

(n) Penalties, as provided by law;

(o) Awarding Plaintiffs the costs associated with this action, together with reasonable attorneys' fees and costs of the action incurred herein, including expert fees;

(p) Reasonable service awards for the Named Plaintiffs to compensate the Named Plaintiffs for the time spent pursuing relief in this action; and

(q) Awarding such other relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated: April 22, 2025

Albany, New York

PORICANIN LAW, P.C.

By: _____

Emina Poricanin
*Attorney for Plaintiffs*
*JOHNNIE FLANAGAN, LAURA*
*CHAPMAN AND PUTATIVE CLASS AND*
*COLLECTIVE MEMBERS*
52 Madeleine Lane
Glenmont, New York 12077
emina@poricaninlaw.com
(315) 269-1125