UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHNNIE FLANAGAN, LAURA CHAPMAN individually and on behalf of other persons similarly situated,<br><br>         Plaintiffs,<br> v.<br><br>PUBLIC PARTNERSHIPS, LLC,<br>         Defendant. | No. 6:25-cv-06225-FPG<br><br>**DECLARATION OF<br>MARIA PERRIN** |

I, Maria Perrin, pursuant to 28 U.S.C. § 1746 and under penalty of perjury, hereby declare as follows:

1. I am the President of Public Partnership, LLC ("PPL").

2. The New York State Consumer Directed Personal Assistance Program ("CDPAP") is a "self-directed" Medicaid home care program. This means that the Medicaid agency allows Medicaid members, otherwise known as Consumers, to recruit, select, and employ their own domestic caregivers, otherwise known as Personal Assistants ("PAs"). Over 200,000 Consumers receive services from PAs through the CDPAP.

3. PPL is statewide fiscal intermediary ("Statewide FI") that has been authorized by New York State to pay PAs for the authorized services that they provide to Consumers under the CDPAP.

4. I have read the Complaint in this case, and it is my understanding that all of the Plaintiffs and putative class members were or are currently PAs for Consumers under the CDPAP in which PPL is involved.

5. To date, approximately 210,000 Consumers have completed the registration process with PPL, and 10,000 Consumers are in process, for a total of 220,000 Consumers.

6. However, there are approximately 10,000 Consumers who have still not completed the registration process with PPL.

1

7. Therefore, determining whether PPL is responsible for any particular PA's alleged unpaid compensation will inherently depend on a wide number of individualized considerations, including first and foremost whether the specific Consumer for whom that PA performed any services ever registered with PPL. If the Consumer had failed to register with PPL, PPL would not be entitled to receive reimbursement from New York State or Medicaid for the work performed by any PA for that Consumer, nor can PPL receive its administrative fee for that Consumer or pay a facilitator an administrative fee for servicing that Consumer. Additionally, as required by PPL's contract with New York State, PPL must have each Consumer's registration complete for the Consumer to be part of CDPAP, including receiving the benefits of the program.

8. With respect to the services that the respective PAs are authorized to provide to their respective Consumers, "Service Authorizations" are issued by the Consumers' respective Managed Care Organization ("MCO") or Local Department of Social Services ("LDSS").

9. There are 34 different MCOs and 58 different LDSSs that issue authorizations for Consumers in New York State.

10. The Service Authorizations are part of the respective Consumers' "service plans."

11. Each case manager at a Consumer's MCO or LDSS makes a determination of how many hours of care that particular Consumer needs, and whether such care must be provided continuously or can be provided intermittently.

12. The case manager then expresses the Service Authorization through a "service code." The different service codes can be generally described as follows:

- Per Hour care for 1 consumer at a time;
- Per Hour care for 2 consumers at a time;
- Per Hour care for 1 consumer at a time (enhanced rate);
- Per Hour care for 2 consumers at a time (enhanced rate);
- 24-hour care by 1 PA for 1 consumer at a time;
- 24-hour care by 1 PA for 2 consumers at a time;
- 24-hour care by 1 PA for 1 consumer at a time (enhanced rate); and
- 24-hour care by 1 PA for 2 consumers at a time (enhanced rate).

13. Consumers—not PPL—are responsible for ensuring that their PAs do not work more than their prescribed number of authorized hours.

14. Consumers—not PPL—are also responsible for ensuring that PAs satisfy the requirements of the service code they are working under.

15. Consumers—not PPL—are also responsible for ensuring that, in accordance with governing audit guidelines, no PA ever works more than 16 hours per day.

16. PPL also enters into different contracts with each of the Consumers and with each of the PAs, respectively.

17. PPL's contract with each of the Consumers is called a Memorandum of Understanding ("MOU") (a copy is attached as Exhibit 1).  In the MOU, Consumers agree that they—and not PPL—are responsible for:

- "Training, scheduling and supervising the Consumer's PA(s)"

- "***Staying within the limits of the Consumer's service authorization***: The service authorization is based on the Consumer's person-centered service plan and plan of care."

- "Creating and maintaining a back-up plan, to ensure that services continue when a PA cannot work their shift."

- "***Making sure that the Consumer's PA(s)***:
    - Accurately and timely submit required registration documents to PPL,
    - Safely and correctly do only the tasks listed in the plan of care,
    - ***Work only the number of hours the service authorization allows***, and
    - ***Accurately and timely report their time worked*** through PPL's Time4Care app, or another approved method," and

- "***Following all employment laws***."

(*See* Exhibit 1, p. 2; emphasis added.)

18. PPL's contract with each of the PAs is called a Personal Assistant Agreement ("PAA") (a copy is attached as Exhibit 2).  In the PAA, PAs agree that:

- "As 'joint' employers, PPL and my consumer have different responsibilities."

3

- "***The Consumer's responsibilities are to***:
    - Decide whether to hire me;
    - ***Make my work schedule***;
    - Train me in my job duties;
    - ***Approve my hours worked***;
    - Supervise my work;" . . .

- "My work schedule will be set by my Consumer . . ."

- "***My work schedule is based on the number of hours of service that my Consumer is authorized to receive***"; . . .

- "There are strict rules about how and when I can perform services for my Consumer:
    - ***I am never allowed to work more hours than is on my work schedule***. . . .
    - I cannot perform services for my Consumer if they are no longer in CDPAP."

- "If I am a live-in worker, I understand that I must receive;
    - At least 8 hours of sleep time each night,
    - At least 5 hours of uninterrupted sleep time each night, and
    - Three one-hour meal breaks each day for breakfast, lunch and dinner."

- "***I must follow all instructions given by my Consumer*** . . ."; and

- "***The Consumer . . . will approve my reported work time*** through Time4Care™ or another approved method."

(*See* Exhibit 2, pp. 2, 3, 4; emphasis added.)

19.     In light of all of the respective contractual rights, obligations, and understandings described above between PPL and Consumers, and between PPL and PAs, proceeding with this lawsuit without also including the Consumers as defendants would result in conflicting legal obligations for PPL, and it would be highly prejudicial to PPL. For example, by the terms of the Consumers' MOUs with PPL, Consumers are exclusively responsible for making sure that the PAs who work for them work only the number of hours that their Service Authorization allows; making sure that the PAs accurate and timely report their hours worked; and following all employment laws. And yet, in this action, the Court may hold PPL alone liable for each of the Consumers' respective failures to perform their own contractual obligations.

4

20. Furthermore, any award of liability or damages that the Court would impose against PPL alone, in the absence of the Consumers, would be ineffectual in providing the PAs the relief that they are seeking. As demonstrated above, it is the PAs' respective Consumers, and not PPL, that are responsible for setting the PAs' schedules; approving the PAs' timesheets; staying within the limits of the Consumer's Service Authorization; making sure that the PAs work only the number of hours the service authorization allows and that they accurately and timely report their time worked; and that they follow all employment laws. As such, any relief imposed against PPL one day would still leave the Consumers completely able to engage in the same conduct that resulted in the PAs' alleged damages—and this lawsuit—in the first place.

21. Furthermore, if the Court were to grant the PAs' request in their Complaint in this action and enjoin PPL from engaging in certain conduct, PPL would have to turn around and impose those same restrictions on the Consumers, without the Consumers being subject to the injunction or being able to assert their rights. PPL's implementation of any Court-ordered injunction may also force PPL to breach its various contractual obligations to the Consumers, as well as to New York State as part of the CDPAP, thereby leaving them unable to protect their interests.

22. In light of all of these myriad resulting circumstances and contractual rights and obligations, any decision issued by this Court against PPL in the absence of the Consumers as defendants will leave PPL subject to a substantial risk of both multiple and inconsistent obligations.

23. Any such judgment would also prejudice both PPL and the Consumers, respectively, since they would each be left uncertain as to how to proceed with the authorization and provision of care for Consumers, and the payment of PAs' compensation by PPL for such care.

24. Since the Consumers' actions described above are so essential to practically every aspect of the PAs' hours worked for which the PAs are seeking compensation in this action, I am

5

not aware of any measures in any possible judgment against PPL that could lessen or avoid the prejudice to PPL and the Consumers, respectively, described above.

25. Likewise, no judgment issued against PPL and in the absence of the Consumers as defendants could be adequate, because the Consumers would continue to engage in the same actions that they engaged in that resulted in this action. They would have no reason to not continue to do so.

26. Lastly, I believe that the PAs could have an adequate remedy if all of the Consumers could not be feasibly joined in this case, because any PA could bring a legal action in his or her individual capacity against PPL and the specific Consumer for whom that PA performed work.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 19, 2025.

_____
Maria Perrin

# EXHIBIT 1



**Public Partnerships LLC**
ONLINE FORM (PAPER FORM AVAILABLE FOR MAIL OR FAX)

# Memorandum of Understanding

**Consumer Name:**                                                                              **PPL ID:**

_____                    _____
             (First name, Last name)


**Designated Representative Name (if applicable):**         **PPL ID (if known):**

_____                    _____
             (First name, Last name)

This Memorandum of Understanding (MOU) is for the Consumer Directed Personal Assistance Program (CDPAP). CDPAP is governed by the New York Department of Health (DOH).

CDPAP allows chronically ill and/or physically disabled individuals receiving home care services greater flexibility and freedom of choice in obtaining such services.

To participate in the CDPAP, a consumer must understand and agree to their role and responsibilities, and the role and responsibilities of Public Partnerships LLC (PPL), the statewide fiscal intermediary.

**The purpose of this MOU:**

This MOU explains the responsibilities of:

- The person receiving services (the consumer),
- The statewide fiscal intermediary - Public Partnerships LLC (PPL).

**Responsibilities of the consumer:**

The consumer, (and their Designated Representative, if there is one) understand and agree that they are responsible for the following:

1. Working with their Local Department of Social Services (LDSS Office) or Managed Care Organization (MCO) to:

    - Develop a person-centered service plan and plan of care, and

Case 6:25-cv-06225-FPG     Document 16-2     Filed 06/20/25     Page 9 of 18



- Update the person-centered service plan and plan of care at least once a year or when a significant change in circumstances occurs.

2. Following their person-centered service plan and plan of care.

3. Contacting their LDSS Office or MCO if they have questions about the person-centered service plan or plan of care.

4. Being available and present for any scheduled assessment or visit by the independent assessor, examining medical professional or LDSS Office staff member.

5. Recruiting and hiring enough PAs for the consumer's care needs.

6. Making sure the consumer's PA(s) are qualified and remain qualified to work.

7. Training, scheduling and supervising the consumer's PA(s).

8. Ensuring a safe home environment for the consumer to receive services.

9. Staying within the limits of the consumer's service authorization:

    - The service authorization is based on the consumer's person-centered service plan and plan of care.
    - The LDSS Office or MCO will send a copy of the consumer's service authorization to PPL.

10. Creating and maintaining a back-up plan, to ensure that services continue when a PA cannot work their shift.

11. Reviewing the plan of care with each PA that is hired.

12. Making sure that the consumer's PA(s):

    - Accurately and timely submit required registration documents to PPL,
    - Safely and correctly do only the tasks listed in the plan of care,
    - Work only the number of hours the service authorization allows, and
    - Accurately and timely report their time worked through PPL's Time4Care™ app, or another approved method.

13. Following all employment laws.

14. Treating the consumer's PAs fairly and honestly.

15. Ending a PA's employment, if that is necessary.

16. Telling PPL if a PA is no longer working for the consumer.

Memorandum of Understanding V7O                                    New York State | CDPAP



17. Telling PPL and the LDSS Office or MCO within 5 business days of any change in the consumer's status or condition. This includes, but is not limited to:

    - Hospitalizations,
    - Address and telephone number changes, and
    - Out of state travel, if the consumer will be receiving services out of state.

18. Not using CDPAP services outside the United States or its territories.

19. Participating in any CDPAP required assessment to ensure that the consumer remains eligible for CDPAP services.

20. Following all other CDPAP requirements.

**Responsibilities of Public Partnerships LLC (PPL):**

PPL has been hired by DOH to serve as the single statewide fiscal intermediary for CDPAP. In that role, PPL is responsible for the following:

1. Assisting the consumer by providing guidance about the rules of CDPAP.

2. Serving as the "joint employer" of the consumer's PAs.

3. Issuing paychecks to the consumer's PA(s). As part of this, PPL will withhold from the PAs' paychecks:

    - Federal, state, and local income tax, consistent with the PA's election, and
    - Social Security taxes.

4. Ensuring that a PA has completed all the required registration paperwork before they start providing services.

5. Providing PAs with benefits including:

    - Health Insurance,
    - Unemployment Insurance, and
    - Worker's compensation Insurance.

6. Processing wage verification requests, Paid Family Leave claims, and Family Medical Leave Act claims.

7. Monitoring the consumer (and DR, if there is one) to ensure that they are able to fulfill their CDPAP responsibilities.

8. Notifying the LDSS Office or MCO of any circumstance that may affect the consumer's (or the DR's, if there is one) ability to fulfill their CDPAP responsibilities.



9. Ensuring that all services provided meet the cultural and linguistic needs of the consumer, of the DR (if there is one), and of the PAs.

10. Providing training for consumers, DRs and PAs.

11. Maintaining a personnel record for PA(s). Each personnel record shall include, at a minimum:

    - Copies of forms used to register,
    - Information needed for:
        - Payroll processing, and
        - Providing benefits.

12. Maintaining records for each consumer, including copies of this MOU, and
    - Documents from the LDSS Office or MCO including service authorizations.

**The right to end this MOU:**

This MOU will end if:

- The consumer voluntarily withdraws from CDPAP,
- The consumer no longer qualifies for CDPAP, or
- The consumer or their Designated Representative cannot fulfill CDPAP responsibilities.

**Consumer Agreement (please check this box):**

☐ I, the consumer, or my Designated Representative (if there is one), agree that:

- I have read and understand all of this MOU.
- I agree to the terms and responsibilities discussed in this MOU.

---

**For PPL Use Only**

**PPL Representative Signature:**

*Maria Perrin*
_____

Memorandum of Understanding V7O                                New York State | CDPAP

# EXHIBIT 2



**Public Partnerships LLC**
PO Box 310, Binghamton, NY 13902
Fax: 1-833-951-0828

# Personal Assistant Agreement

**Personal Assistant Name:**          **PPL ID:**

_____    _____
**(First name, Last name)**

The purpose of this Personal Assistant Agreement is to tell me the rules that I must follow to be a Personal Assistant (PA) in the New York State Consumer Directed Personal Assistance Program (CDPAP).

**To be a PA in CDPAP, I must follow these rules:**

<u>**General Rules:**</u>

1. A PA is a person who is hired to provide care to a person (the consumer) who is part of CDPAP.

2. To be a PA:
   - I must be at least 18 years old.
   - I must have a valid Social Security Number.
   - I must be allowed to work in the US.
   - If I am a parent or a guardian of a consumer who is under the age of 21, I cannot be their PA.
   - If I am the consumer's spouse, I cannot be their PA.
   - If I am the consumer's Designated Representative (DR), I cannot be their PA.

3. When working as a PA, I have two employers:
   - The consumer (or their DR), is my employer; and
   - Public Partnerships LLC (PPL) is also my employer.



4. This arrangement is often called "joint" employment.

5. As "joint" employers, PPL and my consumer have different responsibilities.

6. The consumer's responsibilities are to:

    - Decide whether to hire me;
    - Make my work schedule;
    - Train me in my job duties;
    - Approve my hours worked;
    - Supervise my work;
    - Decide to terminate my employment, if necessary.

7. PPL's responsibilities are to:

    - Make sure that I am qualified to be a PA;
    - Manage the registration process;
    - Issue my paychecks;
    - Collect and submit payroll taxes, and
    - Make deductions from my wages as required by any court order.

**Registering to be a PA**

8. To be a PA, I must register with PPL.

9. Registering with PPL means that I will need to read and complete certain forms.

10. As part of the registration process, I will also need to obtain a health assessment.

11. During the registration process, I must fill out all forms truthfully and accurately.

12. I will complete the health assessment process as directed by PPL.

13. I will sign the registration forms electronically, as requested by PPL.

14. PPL will tell me when my registration is complete or if there are problems with my registration.

15. If I stop working for my consumer for more than 6 months, I may have to complete the registration process over again.

16. I cannot begin working in CDPAP until PPL has told me that my registration is complete.



**PA database checks:**

17. During the registration process, and every month after that, for as long as I am a PA, PPL will run a "database check" on me.

18. These databases are kept by both the federal government and the state of New York.

19. These databases include the names of people who cannot work in CDPAP.

20. If PPL ever finds my name on one of these databases, I will not be able to work in CDPAP.

**Working as a PA**

21. My work schedule will be set by my consumer or their DR.

22. My work schedule is based on the number of hours of service that my consumer is authorized to receive.

23. My consumer or their DR will:
    - Train me in my job duties, and
    - Supervise how I perform those duties.

24. My consumer or their DR can end my job at any time and for any lawful reason.

25. There are strict rules about how and when I can perform services for my consumer:
    - I am never allowed to work more hours than is on my work schedule.
    - I am never allowed to perform work for my consumer if they are in the hospital, a nursing home, or any other care facility.
    - I cannot perform services for my consumer if they are no longer in CDPAP.

26. If I am a live-in worker, I understand that I must receive;
    - At least 8 hours of sleep time each night,
    - At least 5 hours of uninterrupted sleep time each night, and
    - Three one-hour meal breaks each day for breakfast, lunch and dinner.

27. I must follow all instructions given by my consumer or their DR.

28. I must always keep private all personal information about my consumer.

29. I will contact PPL if I have any questions about my wage rate or benefits.



**Reporting My Time**

30. There are strict rules about how and when I must report my work time:

    - I must report my time through PPL's Time4Care™ app, using a mobile phone, a tablet, or a computer.

    - If I cannot use Time4Care™, I must use another approved method to report my time, which may include using the consumer's land line or submitting paper time sheets.  My consumer or PPL will provide more information about this, if needed.

    - I must report my time by logging in at the beginning of every shift, and logging out at the end of every shift, using Time4Care™ or another approved method.

    - I must report my hours each day that I work.  I am not allowed to report my hours late.

31. The consumer or their DR will approve my reported work time through Time4Care™ or another approved method.

**Court Orders:**

32. I understand that PPL may receive court order to deduct money from my paychecks (also known as "garnishments").

33. I understand that it is PPL's job to follow court orders.

34. PPL will deduct money from my paycheck until the court order has been satisfied, or until it no longer applies.

35. I understand that PPL may charge me a processing fee for setting up the court order.

**Avoiding Criminal Behavior:**

36. I understand and agree that:

    - CDPAP is a New York Medicaid program;

    - Being dishonest in a Medicaid program can be a crime; and

    - Being dishonest in a Medicaid program is often referred to as committing "fraud, waste or abuse."

37. I understand that the following dishonest behaviors could be a crime:

    - Reporting time that I did not work;

    - Being paid for work I did not perform;



- Working more hours than I am allowed to work;
- Reporting time worked when my consumer is in a hospital or other care facility; or
- Being dishonest when reporting my time.

38. If I engage in any dishonest behavior while working as a PA:
    - I will need to pay back the money I did not earn,
    - The state or the federal government will pursue all legal means to take back the money, and
    - I may be subject to criminal penalties, including jail time, for committing fraud, waste, or abuse.

**<u>What I Must Report to PPL:</u>**

39. I must tell PPL right away if I suspect that anyone in CDPAP:
    - Has engaged in dishonest behavior (committed fraud, waste, or abuse);
    - Has financially abused the consumer (misused the consumer's funds or property),
    - Has physically, emotionally or sexually abused the consumer, and/or
    - Is guilty of neglecting the consumer.

40. I must report any major decline or change in my consumer's physical or mental status to the consumer's case manager or to PPL.

41. I must notify PPL right away if I cannot reach my consumer or their DR.

42. If I am a live-in worker, I must notify PPL right away:
    - if I have not received 8 hours of sleep each night (at least 5 hours of which are uninterrupted); or
    - if I have not received three one-hour meal breaks each day.

43. I must notify PPL right away if I have any problems with my consumer or their DR.

44. I must notify PPL right away if there are error messages on Time4Care™ or on PPL's web portal.

45. I must notify PPL right away if:
    - My contact information changes, or



- I stop working for my consumer.

**By signing below, I agree to follow all the rules stated above:**

**Personal Assistant Signature:**                                                                 **Date:**

_____                    _____