UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOHNNIE FLANAGAN, LAURA CHAPMAN
individually and on behalf of other persons
similarly situated,                                              No. 6:25-cv-06225-FPG

                                        Plaintiffs,

         v.

PUBLIC PARTNERSHIPS, LLC,

                                        Defendant.

### DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS COMPLAINT, OR, IN THE ALTERNATIVE, TO STRIKE PLAINTIFFS' CLASS ALLEGATIONS

**PIERSON FERDINAND, LLP**
Daniel Messeloff, Esq.
Irene Oria, Esq.
Gerald T. Hathaway, Esq.
*Attorneys for Defendant*
1270 Avenue of the Americas
7th Floor – 1050
New York, New York 10020
(917) 719-5698
Dan.Messeloff@PierFerd.com
Irene.Oria@PierFerd.com
Gerald.Hathaway@PierFerd.com

# **TABLE OF CONTENTS**

Page

INTRODUCTION ............................................................................................................. 1

FACTUAL BACKGROUND ........................................................................................... 3

   I.    The Relationship Between Consumers, PAs and PPL Under the Consumer Directed Personal Assistance Program (CDPAP) ...................................................................3

   II.   Consumers' and PPL's Responsibilities Under the CDPAP Program ........................... 4

   III.  Plaintiffs' Causes of Action ....................................................................................... 8

   IV.  Plaintiffs' Class Allegations ...................................................................................... 8

ARGUMENT ..................................................................................................................... 9

   I.    Plaintiffs' Complaint Should Be Dismissed For Failure to Join the Consumers as Necessary and Indispensable Parties. ........................................................................... 9

       A. Legal Standard for Motion to Dismiss For Failure to Join a Necessary and Indispensable Party .................................................................................................... 9

       B. Plaintiffs' Claims Should be Dismissed Pursuant to Rules 12(b)(7) and 19 for Failure to Join the Consumers as Necessary and Indispensable Parties......................11

          1. The Court Cannot Accord Complete Relief Without the Consumers....................11

          2. Proceeding Without the Consumers Would Impair Their Interests and Subject Them to Conflicting Rulings. ............................................................................. 13

       C. This Action Cannot in Equity and Good Conscience Proceed Without the Consumers. .............................................................................................................. 16

   II.   Plaintiffs' Class Allegations Should be Stricken Pursuant to Rules 12(f), 23(c)(1)(A) and 23(d)(1)(D). ....................................................................................................... 18

       A.  Legal Standard for Motion to Strike Class Allegations ......................................... 18

       B. Plaintiffs' Class Allegations Cannot Satisfy Rule 23 and Are Inherently Unmanageable. for Motion to Strike Class Allegations ........................................... 18

CONCLUSION.............................................................................................................. 25

## **TABLE OF AUTHORITIES**

**FEDERAL CASES**

*Amari v. Griffin*, 339 F.R.D. 91 (W.D. Va. 2021)..........................................................................11

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)............................................................... 21

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................ 19

*Barrus v. Dick's Sporting Goods, Inc.*, 732 F. Supp. 2d 243 (W.D.N.Y. 2010) ........................... 24

*Butler v. City of N.Y.*, 559 F. Supp. 3d 253  (S.D.N.Y. 2021) ....................................................... 5

*D'Ambrosi v. Bayly, Martin, & Fay, Int'l, Inc.*,
    No. 86 Civ. 5368 (JFK), 1987 U.S. Dist. LEXIS 1687  (S.D.N.Y. Mar. 9, 1987)................... 12

*Davis v. Navient Corp.*, No. 17-cv-992, 2018 U.S. Dist. LEXIS 41365, 2018 WL 1603871
    (W.D.N.Y. Mar. 12, 2018) ...................................................................................... passim

*Duvio v. Viking Range Corp.*,
    2013 U.S. Dist. LEXIS 38592, 2013 WL 1180948, *3 (E.D. La. 2013)................................. 20

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)..................................................................... 23

*Global Discount Travel Services, LLC v. Trans World Airlines, Inc.*,
    960 F. Supp. 701(S.D.N.Y. 1997) ...................................................................................... 10

*Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817 (N.D. Ill. 2013) ......................................... 24

*Home Buyers Warranty Corp. v. Hanna*, 750 F. 3d 427 (4th Cir. 2014)............................... 10, 12

*Hovsepian v. Apple, Inc.*, No. 08-5788, 2009 WL 5069144, (N.D. Cal. Dec. 17, 2009).........24-25

*In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229 (2d Cir. 2012) ................................................ 23

*Laker Airways, Inc. v. Brit. Airways, PLC*, 182 F. 3d 843 (11th Cir. 1999)................................. 13

*Moore v. Ashland Oil, Inc.*, 901 F. 2d 1445, 1447 (7th Cir. 1990)................................................ 10

*Murdock-Alexander v. Tempsnow Employment*,
    2016 U.S. Dist. LEXIS 160616, 2016 WL 6833961 (N.D. Ill. 2016)...................................... 19

*Murtaugh v. New York*, 810 F. Supp. 2d 446 (N.D.N.Y. 2011) ...................................................... 9

*National Union Fire Ins. Co. v. Rite Aid of S.C., Inc.*, 210 F.3d 246 (4th Cir. 2000) ................. 16

*Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir., 2011)......................... 20, 24

*Pumputiena v. Deutsche Lufthansa, AG*,
    16 C 4868, 2017 WL 66823, *10 (N.D. Ill. Jan. 6, 2017) ...................................................... 24

*Ragan Henry Broadcast Group, Inc. v. Hughes*, 1992 WL 151308 (E.D. Pa. 1992).................... 10

*Scott v. Family Dollar Stores, Inc.*, No. 3:08CV540, 2012 U.S. Dist. LEXIS 4669,
    2012 WL 113657, at *4 (W.D.N.C. Jan. 13, 2012) .................................................................. 19

*Torrington Co. v. Yost*, 139 F.R.D. 91 (D.S.C. 1991)................................................................... 14

*United States ex rel. Patel v. Fid. Deposit & Disc. Bank*,
    2022 WL 17726308 (M.D. Pa. July 27, 2022) ................................................................. 13-14

*Viacom Intern., Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir. 2000) ............................................... 9

*Woods-Early v. Corning Inc.*, 330 F.R.D. 117 (W.D. N.Y. 2019) .................................................. 19

*Wright v. Family Dollar, Inc.*,
    2010 U.S. Dist. LEXIS 126643, 2010 WL 4962838 (N.D. Ill. 2010).................................... 20

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001)............................... 21, 22, 23

## OTHER AUTHORITIES

18 NYCRR 505.28(a) ............................................................................................................ 3

18 NYCRR 505.28(b)(8) ...................................................................................................... 3

18 NYCRR 505.28(h) ..................................................................................................... 4, 22

18 NYCRR 505.28(j) ...................................................................................................... 4, 24

29 U.S.C. § 206 ..................................................................................................................... 3

29 U.S.C. § 207 ..................................................................................................................... 3

New York Labor Law § 190 ................................................................................................. 3

## FEDERAL RULES

Fed. R. Civ. P. 12(b)(6) ...................................................................................................... 19

Fed. R. Civ. P. 12(b)(7) .......................................................................................... 9, 12, 18

Fed. R. Civ. P. 19...........................................................................9, 10, 11, 16, 17, 18

Fed. R. Civ. P. 19 (a)(1)(A)................................................................................................11

Fed. R. Civ. P. 19(a) ...............................................................................................9, 11, 16

Fed. R. Civ. P. 19(a)(2) ..................................................................................................... 16

Fed. R. Civ. P. 19(b) ................................................................................... 9, 10, 16, 17

Fed. R. Civ. P. 23 ............................................................................................................... 20

Fed. R. Civ. P. 23(a) .......................................................................................................... 20

Fed. R. Civ. P. 23(b)(1) ..................................................................................................... 20

Fed. R. Civ. P. 23(b)(2) ..................................................................................................... 20

Fed. R. Civ. P. 23(c)(1)(A) ......................................................................................... 19, 24

Fed. R. Civ. P. 23(d)(1)(D)......................................................................................... 19, 24

Defendant Public Partnerships, LLC ("Defendant" or "PPL") submits this Memorandum of Law in support of its Motion to dismiss the Collective and Class Action Complaint (the "Complaint") (ECF No. 1) filed by Plaintiffs Johnnie Flanagan and Laura Chapman (collectively, "Plaintiffs"), or, in the alternative, to strike Plaintiffs' class allegations.

## INTRODUCTION

Plaintiffs are two caregivers, also known as "Personal Assistants" or "PAs" who provided caregiving services to people on Medicaid in New York State, or "Consumers" (to use the statutory term for such individuals). PPL is a "fiscal intermediary," which is responsible for processing the pay and certain other limited administrative functions between PAs—such as Plaintiffs—and Consumers, who direct and control the PAs' work, and to whom the PAs provide services.

In this action, Plaintiffs have filed a sprawling Complaint against PPL that not only seeks to certify a class of hundreds of thousands of PAs, but also directly implicates hundreds of thousands of Consumers. Each of the Plaintiffs—and, in general, each of the putative class members—were directed and controlled by different Consumers, and they provided different and individualized services to different Consumers. Furthermore, by law, the Consumers were exclusively responsible for scheduling the hours that Plaintiffs and the putative class members worked, as well as for reviewing, approving, and submitting their time sheets to PPL, and for distributing their pay checks to them in a timely manner, among other tasks that are central to Plaintiffs' claims against PPL. PPL had absolutely no involvement in any of these responsibilities. While PPL and each of the Consumers are joint employers of each PA that provided care for that particular Consumer, there can be no real doubt that each such Consumer is necessary to the adjudication of any wage and hour claim asserted by the PA that is seeking compensation for the work that was performed for—and directed, controlled, and authorized by—that Consumer. Because the Consumers are necessary parties both to any adjudication of Plaintiffs' claims and to

1

any imposition of the compensatory, injunctive and declaratory relief that Plaintiffs are seeking, Plaintiffs' Complaint must be dismissed for failure to name the Consumers as necessary and indispensable parties.

In the event the Court decides not to dismiss Plaintiffs' Complaint in its entirety, Plaintiffs' class allegations should be stricken.  It is abundantly clear on the face of the Complaint that this case is not suitable for class certification.  Plaintiffs purport to bring wage and hour claims under federal and New York law on behalf of themselves and approximately 350,000 other PAs who worked for approximately 250,000 different Consumers, who themselves are the putative class members' "joint employers," together with PPL.  Against this backdrop, Plaintiffs could not possibly meet the requirements of commonality, predominance and superiority under Rule 23 of the Federal Rules of Civil Procedure and, thus, no class could be certified.  Discovery would be futile, given that Plaintiffs allege (and it is incontrovertible) that there are "hundreds of thousands" of different employers—i.e., the Consumers that hire, supervise, employ, and approve the hours worked by Plaintiffs and the putative class members.  These actions taken by the Consumers alone will inevitably inject individualized issues requiring individualized determinations, rendering Plaintiffs' proposed class administratively unmanageable, and defeating the requirements for class certification.  Accordingly, the Court should strike Plaintiffs' improper class allegations pursuant to Federal Rules of Civil Procedure 12(f), 23(c)(1)(A), and 23(d)(1)(D), without waiting for a motion for class certification, and without the need for any discovery, and permit Plaintiffs to proceed with their claims in their respective individual capacities.

## FACTUAL BACKGROUND

### I.  The Relationship Between Consumers, PAs and PPL Under the Consumer Directed Personal Assistance Program.

Plaintiffs are "current employees of [PPL] who work as direct home care workers, providing personal care services to [PPL's] patients, called 'the Consumers,' in a popular Medicaid-funded New York home care program called the '*consumer directed* personal assistance program' ("CDPAP")." (Compl., ¶¶ 2, 13 (emphasis added)).[1]  The express purpose of CDPAP is to allow consumers to choose and manage their own caregivers, which gives Consumers "greater flexibility and freedom of choice in obtaining such services." 18 NYCRR 505.28(a).

PPL is a "fiscal intermediary," or "FI." (Compl., ¶ 3.)  A fiscal intermediary is defined as "an entity that has a contract with the New York State Department of Health to provide wage and benefit processing for *consumer directed* personal assistants and other fiscal intermediary responsibilities." 18 NYCRR 505.28(b)(8) (emphasis added).

Thus, "*[a]long with the Consumers*, a fiscal intermediary [i.e., PPL] is the joint employer of personal assistants like the Plaintiffs and similarly situated employees" within "the meaning of NYLL and the FLSA."[2] (Compl., ¶¶ 4, 11 (emphasis added)).

Until April 1, 2025, FI services to Consumers were provided by over 600 different unlicensed and unregulated FIs.  (*Id.*, at ¶ 18.)  However, pursuant to a statutory amendment, the New York State legislature mandated that a single FI would take over on April 1, 2025. (*Id.*)  Through a bidding process, the Department of Health named PPL as the single FI. (*Id.*, at ¶ 22.)

In January 2025, PAs, including Plaintiffs, began the process of transitioning to be employees of both PPL and Consumers in CDPAP by signing a contract with PPL titled the

---

[1] Unless stated otherwise, all facts are taken from Plaintiffs' Complaint and assumed to be true.
[2] "NYLL" refers to the New York Labor Law §§ 190, 191 , 195 , 663 , 650 and 651 *et seq.*  "FLSA" refers to Fair Labor Standards Act 29 U.S.C. §§ 206 and 207 *et. seq.*

"Personal Assistant Agreement" ("PAA"). (*Id.,* at ¶ 27).  In the PAA, the PAs, including Plaintiffs,

agreed that "[w]hen working as a [PA], I have two employers: The consumer (or their DR [i.e.,

Designated Representative]) is my employer; [PPL] is also my employer." (*Id.,* at ¶¶ 27-28).

## II.    Consumers' and PPL's Responsibilities Under the CDPAP Program

Pursuant to New York Department of Health regulations that govern the relationship

between PPL, Consumers and Personal Assistants like Plaintiffs, Consumers are exclusively

responsible for, *inter alia*, the following tasks under the CDPAP:

> (i) managing the plan of care including ***recruiting*** and ***hiring*** a sufficient number
> of individuals who meet the definition of consumer directed personal assistant . . .
> ***training***, ***supervising*** and ***scheduling*** each assistant; terminating the assistant's
> employment; and assuring that each consumer directed personal assistant
> competently and safely performs the personal care services, home health aide
> services and skilled nursing tasks that are included on the consumer's plan of care;
> . . .
>
> (iv) ***attesting to the accuracy of each consumer directed personal assistant's time
> sheets***;
>
> (v) ***transmitting the consumer directed personal assistant's time sheets to the
> fiscal intermediary according to its procedures***; [and]
>
> (vi) ***timely distributing each consumer directed personal assistant's paycheck, if
> needed***.

(Compl., ¶ 25 (citing 18 NYCRR 505.28(h)), emphasis added).

The same regulations provide that PPL's relevant responsibilities as "fiscal intermediary"

under the CDPAP as are, *inter alia*, as follows:

> (i) processing each consumer directed personal assistant's wages and benefits
> including establishing the amount of each assistant's wages; processing all income
> tax and other required wage withholdings; and complying with worker's
> compensation, disability and unemployment insurance requirements; . . .
>
> (2) ***Fiscal intermediaries are not responsible for fulfilling responsibilities of the
> consumer*** . . .

(Compl., ¶ 23 (citing 18 NYCRR 505.28(j)), emphasis added).

Additionally, to date, approximately 210,000 Consumers have completed the registration process with PPL, and 10,000 Consumers are in process, for a total of 220,000 Consumers. (*See* Declaration of Maria Perrin, attached to the motion as Exhibit 2 ("Perrin Decl."), at ¶ 5.)[3]

However, there are approximately 10,000 Consumers who have still not completed the registration process with PPL. (*Id*. at ¶ 6.) Therefore, determining whether PPL is responsible for any particular PA's alleged unpaid compensation will inherently depend on a wide number of individualized considerations, including first and foremost whether the specific Consumer for whom that PA performed any services ever registered with PPL. (*Id.*, at ¶ 7.) If the Consumer had failed to register with PPL, PPL would not be entitled to receive reimbursement from New York State or Medicaid for the work performed by any PA for that Consumer, nor can PPL receive its administrative fee for that Consumer or pay a facilitator an administrative fee for servicing that Consumer. (*Id.*) Additionally, as required by PPL's contract with New York State, PPL must have each Consumer's registration complete for the Consumer to be part of CDPAP, including receiving the benefits of the program. (*Id*.)

With respect to the services that the respective PAs are authorized to provide to their respective Consumers, "Service Authorizations" are issued by the Consumers' respective Managed Care Organization ("MCO") or Local Department of Social Services ("LDSS"). (*Id*. at ¶ 8.) There are 34 different MCOs and 58 different LDSSs that issue authorizations for Consumers in New York State. (*Id*. at ¶ 9.) These Service Authorizations are part of the respective Consumers' "service plans." (*Id*. at ¶ 10.)

To prepare each Consumer's Service Authorization, each case manager at a Consumer's MCO or LDSS makes a determination of how many hours of care that particular Consumer needs,

---

[3] In deciding a motion under Rule 12(b)(7), the Court can consider matters outside of the pleadings, such as affidavits. *Butler v. City of N.Y.*, 559 F. Supp. 3d 253, 264 (S.D.N.Y. 2021).

and whether such care must be provided continuously or can be provided intermittently. (*Id*. at ¶

11.) The case manager then expresses the Service Authorization through a "service code." (*Id*. at

¶ 12.) The different service codes can be generally described as follows:

- Per Hour care for 1 Consumer at a time;
- Per Hour care for 2 Consumers at a time;
- Per Hour care for 1 Consumer at a time (enhanced rate);
- Per Hour care for 2 Consumers at a time (enhanced rate);
- 24-hour care by 1 PA for 1 Consumer at a time;
- 24-hour care by 1 PA for 2 Consumers at a time;
- 24-hour care by 1 PA for 1 Consumer at a time (enhanced rate); and
- 24-hour care by 1 PA for 2 Consumers at a time (enhanced rate).

(*Id*.)

Consumers—not PPL—are responsible for ensuring that their PAs do not work more than

their prescribed number of authorized hours in their respective Service Authorizations. (*Id*. at ¶

13.) Consumers—not PPL—are also responsible for ensuring that their PAs satisfy the

requirements of the particular service code that they are working under. (*Id*. at ¶ 14.) Consumers—

not PPL—are also responsible for ensuring that, in accordance with governing guidelines, no PA

ever works more than 16 hours per day. (*Id*. at ¶ 14.)

PPL also enters into different contracts with each of the Consumers and with each of the

PAs, respectively. (*Id*. at ¶ 16.) PPL's contract with each of the Consumers is called a

Memorandum of Understanding ("MOU"). (*See id*. at ¶ 17, Exh. 1.) In the MOU, Consumers

agree that they—and not PPL—are responsible for:

- "Training, scheduling and supervising the Consumer's PA(s)"

- "***Staying within the limits of the Consumer's service authorization***: The service authorization is based on the Consumer's person-centered service plan and plan of care."

- "Creating and maintaining a back-up plan, to ensure that services continue when a PA cannot work their shift."

- "***Making sure that the Consumer's PA(s)***:
  - Accurately and timely submit required registration documents to PPL,

- Safely and correctly do only the tasks listed in the plan of care,
- ***Work only the number of hours the service authorization allows***, and
- ***Accurately and timely report their time worked*** through PPL's Time4Care app, or another approved method," and

  - "***Following all employment laws***."

(*See id.* at Exh. 1, p. 2; emphasis added.)

As noted above, PPL's contract with each PA is called a Personal Assistant Agreement ("PAA"). (*Id.*, at ¶ 18, Exh. 2.)  In the PAA, PAs agree that:

  - "As 'joint' employers, PPL and my consumer have different responsibilities."

  - "***The Consumer's responsibilities are to***:
    - Decide whether to hire me;
    - ***Make my work schedule***;
    - Train me in my job duties;
    - ***Approve my hours worked***;
    - Supervise my work;" . . .

  - "My work schedule will be set by my Consumer . . ."

  - "***My work schedule is based on the number of hours of service that my Consumer is authorized to receive***"; . . .

  - "There are strict rules about how and when I can perform services for my Consumer:
    - ***I am never allowed to work more hours than is on my work schedule***. . . .
    - I cannot perform services for my Consumer if they are no longer in CDPAP."

  - "If I am a live-in worker, I understand that I must receive;
    - At least 8 hours of sleep time each night,
    - At least 5 hours of uninterrupted sleep time each night, and
    - Three one-hour meal breaks each day for breakfast, lunch and dinner."

  - "***I must follow all instructions given by my Consumer*** . . ."; and

  - "***The Consumer . . . will approve my reported work time*** through Time4Care™ or another approved method."

(*See id.* at Exh. 2, pp. 2, 3, 4; emphasis added.)

III.    **Plaintiffs' Causes of Action**

Plaintiffs bring, on behalf of themselves and all other putative class members, ten causes of action against PPL seeking monetary relief, injunctive relief, an order compelling PPL to comply with FLSA and NYLL, and other relief.  Plaintiffs' specific claims are for unpaid minimum wages; unpaid overtime wages; unpaid spread of hours premium compensation; unpaid split shift compensation; failure to pay wages on a timely basis; statutory damages; unpaid call-in pay; and breach of contract for unpaid on-boarding/recruitment bonuses. (*See* Compl., at ¶¶ 104-165.)

IV.    **Plaintiffs' Class Allegations**

Plaintiffs allege that they intend to represent an "FLSA Collective" comprised of "[a]ll current employees of Defendant who work and have worked as personal assistants in all counties of New York State, excluding Westchester County, Nassau County, Suffolk County and New York City, during the time period commencing on March 1, 2025 until a resolution of this action." (*Id.*, at ¶ 76).  Plaintiffs also seek to represent "New York Class Members" defined as "Plaintiffs and a class consisting of similarly situated employees who worked for Defendant as personal assistants in CDPAP starting with their employment with PPL in or about March 1, 2025." (*Id.*, at ¶ 84.)

Plaintiffs allege that the size of these putative classes includes "hundreds of thousands of other personal assistants." (*Id.*, ¶¶ 7, 89-90).  And, by virtue of the Consumers' express and exclusive responsibility for, *inter alia*, "scheduling each assistant," "attesting to the accuracy of each consumer directed personal assistant's time sheets," "transmitting the consumer directed personal assistant's time sheets to [PPL] according to its procedures," and "timely distributing each consumer directed personal assistant's paycheck" (*id.*, at ¶ 25), each of Plaintiffs' class claims will, by necessity, directly implicate and require the involvement of each Consumer for whom each Plaintiff and putative class member performed work for which they now seek compensation.

8

## ARGUMENT

I.    **Plaintiffs' Complaint Should Be Dismissed For Failure to Join the Consumers as Necessary and Indispensable Parties.**

### A.    Legal Standard for Motion to Dismiss For Failure to Join a Necessary and Indispensable Party.

Federal Rule of Civil Procedure 12(b)(7) provides for dismissal if a party has not been joined as required by Federal Rule of Civil Procedure Rule 19. Fed. R. Civ. P. 12(b)(7).

Rule 19 sets up a two-step test. *Viacom Intern., Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir. 2000). First, "the court must determine whether an absent party belongs in the suit, i.e., whether the party qualifies as a `necessary' party under Rule 19(a)." *Id*.

Pursuant to Rule 19(a) the absent party should be joined where:

(A)    in that person's absence, the court cannot accord complete relief among existing parties; or

(B)    that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i)    as a practical matter impair or impede the person's ability to protect the interest; or

(ii)    leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a); *see also Murtaugh v. New York*, 810 F. Supp. 2d 446 (N.D.N.Y. 2011).

Where this threshold decision of necessity is answered in the affirmative and joinder of the absent party is not feasible, then the Court must proceed to the second inquiry and determine whether the party is indispensable under Rule 19(b). *Kearney*, 213 F.3d at 725.

Rule 19(b) sets out four factors to be considered by the court in determining whether a party is indispensable:

(1)    [T]he extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

9

(2)    the extent to which any prejudice could be lessened or avoided by . . . protective provisions in the judgment . . . shaping the relief[,] or . . . other measures;

(3)    whether a judgment rendered in the person's absence would be adequate; and

(4)    whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

*Id*.; Fed. R. Civ. P. 19(b).

If the Court determines that a party is indispensable, "then the court must dismiss the action pursuant to Rule 19(b)." *Kearney*, 213 F.3d at 725.

The analysis under Rule 19 at both steps is not a "procedural formula," but rather a decision that "'must be made pragmatically, in the context of the substance of each case.'" *Home Buyers Warranty Corp. v. Hanna*, 750 F. 3d 427, 433 (4th Cir. 2014) (citation omitted).  The purpose behind Rule 19 is "to permit joinder of all materially interested parties to a single lawsuit so as to protect interested parties and avoid waste of judicial resources." *Moore v. Ashland Oil, Inc*., 901 F. 2d 1445, 1447 (7th Cir. 1990).

Two further points regarding "indispensable parties" are determinative in this case.  First, all parties to contracts at issue in a dispute—such as the PAAs between the PAs and PPL, together with the MOUs between the Consumers and PPL, all of which together form the bases for many, if not all, of Plaintiffs' claims that they have asserted against PPL alone—are generally considered to be "indispensable parties" to a claim based on that contract. *See Global Discount Travel Services, LLC v. Trans World Airlines, Inc*., 960 F. Supp. 701, 707-08 (S.D.N.Y. 1997) ("As a direct party to the contract which is under dispute, Karabu is a necessary party to this litigation."); *Ragan Henry Broadcast Group, Inc. v. Hughes*, 1992 WL 151308, *2 (E.D. Pa. 1992) ("Generally, where rights sued upon arise from a contract, all parties thereto must be joined.") (citing cases).

10

Second, where a plaintiff seeks injunctive relief to prevent the continuation of alleged unlawful conduct—such as Plaintiffs assert against PPL in this case—all parties that are necessary to the cessation of such unlawful conduct are by definition necessary parties to the action. Otherwise, the Court would be unable to afford complete relief, since at least some of the parties that are responsible, in whole or in part, for such unlawful conduct will not be subject to the Court's order of relief, and the unlawful conduct will continue. *See, e.g., B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc*., 440 F.3d 541, 548 (1st Cir. 2006) (holding that party was indispensable when an injunction would affect its interests under agreements at issue).

**B.**   **Plaintiffs' Claims Should be Dismissed Pursuant to Rules 12(b)(7) and 19, for Failure to Join the Consumers as Necessary and Indispensable Parties.**

In this case, both prongs of the necessary party inquiry under Rule 19 result in the same conclusion: Each of the Consumers are necessary and indispensable parties under all three alternative tests in Rule 19(a), any one of which is sufficient to grant PPL's instant Motion to Dismiss. And, to leave out the Consumers from this action would severely prejudice PPL's rights. Lastly, since it is inherently impracticable to add each of the hundreds of thousands of Consumers as defendants, Plaintiffs' Complaint should be dismissed.

**1.**   **The Court Cannot Accord Complete Relief Without the Consumers.**

This Court cannot accord the complete relief requested by Plaintiffs in the absence of the Consumers. Complete relief is relief that will effectively and completely adjudicate the dispute. *Amari v. Griffin*, 339 F.R.D. 91, 94 (W.D. Va. 2021). Rule 19(a)(1)(A) "stresses the desirability of joining those persons in whose absence the court would be obliged to grant partial or 'hollow' rather than complete relief to the parties before the court." *Id.*

The heart of this action is a dispute between Plaintiffs and *both* PPL and each Consumer, as each Plaintiff's and putative class member's joint employer. By Plaintiffs' own allegations, the

Consumers "schedule[ed] each assistant," "attest[ed] to the accuracy of each consumer directed personal assistant's time sheets," "transmit[ed] the consumer directed personal assistant's time sheets to [PPL] according to its procedures," and "timely distribut[ed] each consumer directed personal assistant's paycheck" (Compl., at ¶ 25). Furthermore, the Consumers—not PPL—were responsible for, and actually did, manage each PA's hours worked under that particular Consumer's Service Authorization, issued by the various MCOs and LDSSs. Thus, "it [is] clear that any tribunal to address this matter must have [the Consumers] present as parties to fully resolve the dispute." *Home Buyers Warranty Corp.*, 750 F. 3d at 435. It is also axiomatic that "complete relief" cannot be provided to former employees bringing claims for compensation owed during the course of their employment without bringing their employer as a named defendant. *See D'Ambrosi v. Bayly, Martin, & Fay, Int'l, Inc*., No. 86 Civ. 5368 (JFK), 1987 U.S. Dist. LEXIS 1687, at \*7 (S.D.N.Y. Mar. 9, 1987) (dismissing action under Rule 12(b)(7) where plaintiff failed to name employer in compensation-related action).

This is especially true given Plaintiffs' request for injunctive relief. (*See* Compl. at Prayer for Relief, at p. 34, (f)-(g)). Any injunctive relief here absent the Consumers would be incomplete, as the Consumers would be free to engage in precisely the same conduct with respect to Plaintiffs' schedules, hours worked, time sheets, and otherwise, all of which gave rise to Plaintiffs' claims in this action. This alone is reason to find the Consumers are necessary and indispensable parties.

Furthermore, any award of liability or damages that the Court would impose against PPL alone, in the absence of the Consumers, would be ineffectual in providing Plaintiffs and the putative class members the relief that they are seeking. As demonstrated above, it is Plaintiffs' and each of the putative class members' respective Consumers, and not PPL, that are responsible for setting their schedules; approving their timesheets; staying within the limits of the Consumer's Service Authorization; making sure that they work only the number of hours the Service Authorization

allows and that they accurately and timely report their time worked; and "*follow[ing] all employment laws*." (*See* Perrin Decl., at Exh. 1, p. 2; emphasis added.) As such, any relief imposed against PPL one day would still leave the Consumers completely free and clear to engage in the same conduct that resulted in the Plaintiffs' and putative class members' alleged damages—and this lawsuit—in the first place. (*Id*. at ¶ 20.)

Moreover, if the Court were to grant Plaintiffs' request in their Complaint in this action and enjoin PPL from engaging in certain conduct, PPL would have to turn around and impose those same restrictions on the Consumers, without the Consumers being able to assert their rights. (*Id*. at ¶ 21.) PPL's implementation of any Court-ordered injunction may also force PPL to breach its various contractual obligations in their MOUs with Consumers, as well as to New York State as part of the CDPAP, thereby leaving those parties unable to protect their interests. (*Id*.)

## 2.    Proceeding Without the Consumers Would Impair Their Interests and Subject Them to Conflicting Rulings.

The Consumers are also a necessary and indispensable party for two additional, independent reasons: (1) proceeding without them would impair their interests; and (2) proceeding without them would create a substantial risk of inconsistent judgments.

First, proceeding without the Consumers would impair their interests. It is black-letter law that a party is interested in the "determination of the legal significance of their actions," *Hanna*, 750 F. 3d at 435, which, in this case, is the Consumers' alleged actions with respect to Plaintiffs' schedules and the Consumers' approval of Plaintiffs' and putative class members' time sheets, among other actions. Similarly, a "joint tortfeasor will be considered a necessary party when the absent party emerges as an active participant in the allegations made in the complaint that are critical to the disposition of the important issues in the litigation." *Laker Airways, Inc. v. Brit. Airways, PLC*, 182 F. 3d 843, 848 (11th Cir. 1999) (internal quotations omitted); *see also United States ex*

13

*rel. Patel v. Fid. Deposit & Disc. Bank*, No. 2022 WL 17726308, at *11 (M.D. Pa. July 27, 2022)

(finding party necessary where "amended complaints are replete with allegations regarding false

and misleading submissions made by or on behalf of" absent party).

      As one federal court explained in an analogous employment case where the defendant and

the absent party were parties to a relevant contract, and the plaintiff was seeking injunctive relief

against the defendant:

> Clearly subsection (a)(2) applies, and [the absent party] should be joined if feasible.
> [The absent party] has an employment contract with [the defendant], and its
> interest in his fulfilling that contract would be adversely affected if [the plaintiff]
> were granted an injunction preventing [the defendant] from continuing to work for
> [the absent party] in his current position.
>
> In addition, there is a real possibility that if [the absent party] were not joined, [the
> defendant] may be subject to inconsistent obligations. In order to obey a court order
> enjoining him from working for [the absent party] (or enjoining him from working
> on certain projects at [the absent party]), [the defendant] may have to breach his
> employment contract with [the absent party].
>
> Because [the defendant] may be prejudiced if [the absent party] is not joined and
> [the absent party] has an interest which may be impaired in its absence, under Rule
> 19(a) the court is required to join [the absent party] as a party if feasible.

*Torrington Co. v. Yost*, 139 F.R.D. 91, 93 (D.S.C. 1991).

      Here, proceeding without the Consumers would impair their interests, given that Plaintiffs

allege that the Consumers' actions—their exclusive creation of Plaintiffs' work schedules, their

approval and submission of Plaintiffs' time sheets, their timely distribution of Plaintiffs' pay

checks, and more—are at the core of the claims that Plaintiffs seek to adjudicate in this action.

      A ruling in favor of Plaintiffs in this action would necessarily require findings—hundreds

of thousands of findings, to be exact—that: (1) the Consumer-created schedules for Plaintiffs

resulted in work for which Plaintiffs were not compensated; (2) the time sheets that the Consumers

attested to PPL were accurate were not in fact accurate; (3) the Consumers failed to properly submit

Plaintiffs' time sheets to PPL; and more. Such findings would prejudice the Consumers' rights and interests in an action where they are not parties to defend themselves.

Second, the Consumers are also necessary and indispensable parties because proceeding in this action without the Consumers will create a substantial risk of inconsistent judgments. There is a "high likelihood of incongruous results" where separate courts may be "asked to make determinations" on the same subject matter. *See, e.g., Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 441 (4th Cir. 1999) (finding absent party necessary due to potential for inconsistent judgments).

In light of all of the respective contractual rights, obligations, and understandings between PPL and Consumers, and between PPL and PAs such as Plaintiffs and each of the putative class members, proceeding with this lawsuit without also including the Consumers as defendants would result in conflicting legal obligations for PPL, and it would be highly prejudicial to PPL. (*See* Perrin Decl., at ¶ 19-25.) For example, by the terms of the Consumers' MOUs with PPL, Consumers are exclusively responsible for making sure that their Personal Assistants work only the number of hours that their Service Authorization allows; making sure that the Personal Assistants accurate and timely report their hours worked; and following all employment laws. (*Id*. at ¶ 20.) And yet, in this action, the Court may hold PPL alone liable for the Consumers' failure to perform their own contractual obligations.

Any decision issued by this Court against PPL in the absence of the Consumers as defendants will also leave PPL subject to a substantial risk of both multiple and inconsistent obligations under these myriad conflicting interests. (*Id*. at ¶ 22.) And, any such judgment would also prejudice both PPL and the Consumers, respectively, since they would each be left uncertain as to how to proceed with the authorization and provision of care for Consumers, and the payment of Personal Assistants' compensation by PPL for such care. (*Id*. at ¶ 23.)

15

For each of the reasons demonstrated above—the Court cannot award complete relief without the Consumers; proceeding without the Consumers would impair their rights; and it would create a substantial risk of inconsistent judgments—the Consumers are necessary and indispensable parties.

### C.   This Action Cannot in Equity and Good Conscience Proceed Without the Consumers.

Because the Consumers are necessary and indispensable parties, the next step under Rule 19 is to consider whether this action should proceed without the Consumers or be dismissed pursuant to Rule 19(b).

Here, all the factors described under Rule 19(b) above weigh in favor of this Court ruling that this action cannot proceed in equity and good conscience without the Consumers.

First, as discussed above, the Consumers would be prejudiced by any judgment rendered here given they are each implicated in—indeed at the center and inextricable links in the chain of—Plaintiffs' allegations in this case. "This factor addresses many of the same concerns as Rule 19(a)(2)," focusing on whether the absent party "would be impaired or impeded from protecting its separate and distinct interest in the district court's determination" of the dispute. *See National Union Fire Ins. Co. v. Rite Aid of S.C., Inc.*, 210 F.3d 246, 252 (4th Cir. 2000) (finding prejudice where the action "concerns [the absent party's] conduct"). And if this action proceeds, the Consumers will be subject to substantial burdens as a non-party witnesses, including being subject to discovery on Plaintiffs' claims. The Consumers may also need to appear at trial, given that they are each key—indeed the most important—witnesses.

Second, there are no protective or other measures which could lessen or avoid such prejudice given that the Consumers' actions are central both to Plaintiffs' claims and to PPL's defenses to such claims. (*See* Perrin Decl., at ¶ 24.)

16

Third, a judgment rendered in the Consumers' absence would not be adequate. This factor implicates "the interests of the courts and the public in complete, consistent and efficient settlement of controversies." *Nat'l Union Fire Ins. Co.*, 210 F. 3d at 253 (quotation omitted).  Even assuming for the sake of argument that Plaintiffs are entitled to a remedy here (they are not), such remedy would be inadequate in the absence of the Consumers.  Plaintiffs' asserted prayer is to stop PPL from engaging in unlawful conduct with respect to Plaintiffs' and the putative class members' hours worked and compensation, but, by Plaintiffs' own allegation and admission, it was the Consumers, and not PPL, that are responsible for approving and submitting Plaintiffs' time sheets, scheduling their hours worked, and many other critical aspects of the procedure that resulted in Plaintiffs receiving compensation for the work they performed for the Consumers.  While this action could prevent PPL from taking certain actions, nothing in this action could prevent the Consumers from engaging in the exact same actions that directly resulted in Plaintiffs filing this action against PPL. (*See* Perrin Decl., at ¶ 25.)  This sort of "piecemeal and inefficient litigation" is precisely the scenario that Rule 19(b) is designed to avoid. *See Nat'l Union Fire Ins. Co.*, 210 F. 3d at 253 (where "all claims and potential crossclaims can be heard in one case, resolving the entire controversy in that court will promote '[t]he public interest in avoiding piecemeal and inefficient litigation.'") (internal citation omitted).

Likewise, no judgment issued against PPL and in the absence of the Consumers as defendants could be adequate, because the Consumers would continue to engage in the same actions that they engaged in that resulted in this action. (*See* Perrin Decl., at ¶ 25.)  They would have no reason to not continue to do so. (*Id.*)

Since the Consumers' actions described above are so essential to practically every aspect of the Plaintiffs' and putative class members' hours worked for which they are seeking compensation in this action, PPL is not aware of any measures in any possible judgment against

17

PPL that could lessen or avoid the prejudice to PPL and the Consumers, respectively, described above. (*Id*. at ¶ 24.)

Finally, Plaintiffs would have an adequate remedy if this action were dismissed for non-joinder of the Consumers. Dismissal under Rule 19 is without prejudice and thus would not impact Plaintiffs' and any given putative class members' future ability to litigate these claims in their individual capacity against the specific Consumer for whom that Plaintiff or putative class member worked, and who approved and submitted that individual's time sheets, as well as against PPL. (*Id*. at ¶ 26.)

Because this action cannot proceed "in equity and good conscience" without the Consumers, dismissal is proper under Rule 19 and Rule 12(b)(7).

## II.    Plaintiffs' Class Allegations Should be Stricken Pursuant to Rules 12(f), 23(c)(1)(A) and 23(d)(1)(D).

In the alternative, in the event the Court declines to dismiss Plaintiffs' Complaint in its entirety for failure to join the Consumers as necessary parties, Plaintiffs' claims implicate inherently individualized issues that simply cannot be addressed on a class-wide basis. Specifically, Plaintiffs' allegations turn upon the employment relationships that they and potentially 350,000 Personal Assistants had with 250,000 different Consumers, and the details of those interactions concerning the Personal Assistants' own unique employment situations, including unique employment decisions regarding scheduling, hours worked, work authorizations, etc., made exclusively by Consumers. These allegations are not, and could not be, suitable for class treatment.

### A.    Legal Standard for Motion to Strike Class Allegations

Rule 12(f) provides that a court may "strike from a pleading ... any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A challenge to the adequacy of class

allegations is typically evaluated under the rubric of Rule 12(f). *See, e.g., Woods-Early v. Corning Inc.*, 330 F.R.D. 117, 122 (W.D.N.Y. 2019) (citation omitted). "[T]he standard applied is the 'mirror image' of the standard applied to a Rule 12(b)(6) motion." *Id*.

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). This standard applies to motions to strike class allegations. *Davis v. Navient Corp.*, No. 17-cv-992, 2018 U.S. Dist. LEXIS 41365, 2018 WL 1603871, at *10 (W.D.N.Y. Mar. 12, 2018) (citation omitted). Moreover, the Court "would still be required to determine whether it is 'plain enough from the pleadings' that plaintiffs cannot meet their burden under Rule 23 to show class treatment is appropriate in this case." *Id*., at n. 8.

Accordingly, "[a]lthough class certification typically occurs at a later stage of the proceedings, a motion to strike class allegations is procedurally permissible at the pleading stage." *Davis*, 2018 U.S. Dist. LEXIS 41365, 2018 WL 1603871, at *4 (internal quotation marks and brackets omitted) (citing *Murdock-Alexander v. Tempsnow Employment*, 2016 U.S. Dist. LEXIS 160616, 2016 WL 6833961, *3 (N.D. Ill. 2016) ("[t]he interplay of Rules 12(f), 23(c)(1)(A), and 23(d)(1)(D) empowers the Court to dismiss or strike class allegations at the pleading stage")). "[T]o succeed on a motion to strike class allegations, a defendant must demonstrate from the face of the complaint that it would be impossible to certify the alleged class regardless of the facts the plaintiffs may be able to obtain during discovery." *Woods-Early*, 330 F.R.D. at 122-23 (citing *Guariglia*, 2018 U.S. Dist. LEXIS 42861, 2018 WL 1335356, at *11 (internal quotation marks omitted)); *see also Scott v. Family Dollar Stores, Inc.*, No. 3:08CV540, 2012 U.S. Dist. LEXIS 4669, 2012 WL 113657, at *4 (W.D.N.C. Jan. 13,

2012) ("[T]he court finds that … it would be futile to allow plaintiffs to conduct discovery because plaintiff's theory for class certification is simply foreclosed…."); *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir., 2011) ("The problem for the plaintiffs is that we cannot see how discovery or for that matter more time would have helped them."); *Wright v. Family Dollar, Inc.*, 2010 U.S. Dist. LEXIS 126643, 2010 WL 4962838, *1 (N.D. Ill. 2010) ("courts may - and should - address the plaintiff's class allegations when the pleadings are facially defective and definitively establish that a class action cannot be maintained"); *Duvio v. Viking Range Corp.*, 2013 U.S. Dist. LEXIS 38592, 2013 WL 1180948, *3 (E.D. La. 2013) ("[t]ypically, the decision to certify a class action can be made on the pleadings")).

The Rule 23 requirements that plaintiffs must satisfy to defeat a motion to strike class allegations "include 'satisfying Rule 23(a)'s prerequisites' of numerosity, commonality, typicality, and adequacy of representation, as well as demonstrating 'that the action is maintainable under Rule 23(b)(1), (2), or (3.'" *Davis,* 2018 U.S. Dist. LEXIS 41365, *11 (citation omitted). Here, since Plaintiffs primarily seek monetary relief, and since Plaintiffs' Complaint states that they will be seeking certification under Rule 23(b)(3), Rule 23(b) imposes two additional requirements: predominance and superiority.  (*See* Compl., ¶¶ 91, 99-103 (allegations concerning predominance and superiority)). To satisfy Rule 23(b)(3), "[c]ommon questions must predominate over any questions affecting only individual members; and class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy." *Davis,* 2018 U.S. Dist. LEXIS 41365, *11.

Rule 23(a)'s commonality requirement "does not mean merely that [the class members] have all suffered a violation of the same provision of law." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  Rather, the claim must depend on a "common contention" that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue

20

that is central to the validity of each one of the claims in one stroke." *Id.* "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* (emphasis in original).

Meanwhile, the Supreme Court has held that the predominance requirement of Rule 23(b)(3) "tests whether [the] proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997). "[I]f the main issues in a case require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate. . . . Moreover, when individual rather than common issues predominate, the economy and efficiency of class action treatment are lost and the need for judicial supervision and the risk of confusion are magnified." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001) (citation omitted). Indeed, courts have held that, when even a single essential element of a class claim must be resolved on an individual basis, predominance is defeated. *See id.*

### B.      Plaintiffs' Class Allegations Cannot Satisfy Rule 23 and Are Inherently Unmanageable.

Here, Plaintiffs' proposed classes plainly do not meet these standards because, even from the face of their Complaint, any analysis of liability will require a highly fact-intensive and individualized analysis of the interactions between each of the "hundreds of thousands" Consumers and the particular Plaintiff or putative class member—among the hundreds of thousands of them, as well—who worked for that specific Consumer. Examples of these interactions include, *inter alia*, whether the putative class member provided "authorized services" included on the Consumer's particular Service Authorization; whether the putative class members' time sheets attested to by the Consumer and transmitted to PPL were accurate; whether the

21

Consumer transmitted the putative class member's time sheets to PPL in accordance with PPL's procedures; and whether the Consumer worked with more than one putative class member at a time, which is prohibited under CDPAP. (Compl., ¶ 25 (citing 18 NYCRR 505.28(h)). Additional individualized issues include whether the putative class member worked under and pursuant to the correct service code, as dictated by each Consumer's MCO or LDSS, as well as individualized contractual requirements that governed the relationships between each Plaintiff and putative class member and PPL, which were themselves impacted by the contractual requirements that governed the relationships between each Consumer and PPL. (*See* Perrin Decl., at ¶¶ 17-19.)

In short, Plaintiffs' claims will turn in large part on whether Plaintiffs and the putative class members can prove that they actually worked the number of hours they claim to have worked. Conversely, any determination of whether Plaintiffs are entitled to unpaid wages based on their own circumstances attested to by the particular Consumer for whom they worked cannot possibly determine, one way or another, whether any other putative class member that worked for any other Consumer under inherently different circumstances also suffered a violation of the any law. There would be no uniform manner in which to assess the Plaintiffs' claims on a class-wide basis, meaning that an individualized inquiry would be necessary to adjudicate the claims of each of the alleged "hundreds of thousands" of class members. (Compl., ¶ 7). *See Davis*, 2018 U.S. Dist. LEXIS 41365, at *15 (recommending that motion to strike class allegations be granted where "there is no uniformity among the class members either as to the alleged conduct . . . or as to their alleged injuries arising from that conduct"). "[I]f the main issues in a case require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate." *Zinser*, 253 F.3d at 1189 (citation omitted). Thus, on the face of the Complaint, it is apparent that Plaintiffs cannot possibly demonstrate commonality or predominance. Based on these failures alone, the class allegations should be stricken in their entirety.

In addition, for the same reasons discussed above, Plaintiffs cannot establish that a class action is superior to other available methods of adjudication as required by Rule 23(b)(3). A class action must be manageable. *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 242 (2d Cir. 2012) ("[T]he plain text of Rule 23(b)(3) states that one of the 'matters pertinent' to a finding of predominance is 'the likely difficulties in managing a class action.'") (quoting Fed. R. Civ. P. 23(b)(3))); *Davis*, 2018 U.S. Dist. LEXIS 41365, at *15-16 ("Rule 23(b)(3) is designed to 'cover cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated.'"). As noted by the Supreme Court, the superiority factor "encompasses the whole range of practical problems that may render the class action format inappropriate for a particular suit." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 164 (1974). "If each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not 'superior.'" *Zinser*, 253 F.3d at 1192.

It is self-evident that a class litigation of Plaintiffs' Complaint would be entirely inappropriate and unmanageable. There are hundreds of thousands of putative class members (as well as hundreds of thousands of respective Consumers that employed each of those respective putative class members, together with PPL), and the need to evaluate each of their claims individually creates an insurmountable hurdle to class certification. If there are "hundreds of thousands" of class members and "hundreds of thousands" of joint employers at issue—as Plaintiffs themselves readily admit—this necessarily raises the specter of "hundreds of thousands" of additional defendants or third-party defendants, a quintessentially unmanageable litigation. *See, e.g., Davis*, 2018 U.S. Dist. LEXIS 41365, at *15-16 (Mag. J. J. McCarthy, W.D. N.Y., recommending that motion to strike class allegations be granted where "[t]he variables that exist as to each member's claim and the resulting confusion which those variables would cause at trial demonstrate that certifying a class would be an inefficient adjudication of the claims"). In addition,

23

PPL may have the right to seek indemnification or contribution from any Consumers that might have provided inaccurate time sheets to PPL, or might not have complied with the Consumers' responsibilities under CDPAP, or might have violated wage and hour laws themselves.

Furthermore, it would be impossible to certify the alleged classes regardless of any facts that Plaintiffs may be able to obtain during discovery. This is because the facts that defeat the commonality and predominance requirements, and thus render this class action unmanageable and not superior to individual litigation, are not facts that can be developed during discovery. The Consumers' and PPL's respective responsibilities as joint employers are set forth in the CDPAP implementing regulations (*see* 18 NYCRR 505.28(h) (j))—and the facts that there are "hundreds of thousands" of Consumers and "hundreds of thousands" of putative class members—are not facts that will be subject to meaningful development during discovery. Indeed, discovery would only confirm these indisputable facts that render a putative class action such as this case facially defective and unmanageable. *See, e.g., Barrus v. Dick's Sporting Goods, Inc.*, 732 F. Supp. 2d 243, 252 (W.D.N.Y. 2010) (striking plaintiffs' class claims, concluding that, *inter alia*, issues of commonality would prevent certification without requiring discovery). Numerous courts nationwide have stricken class allegations where, as here, it is apparent on the face of the complaint that no class can be certified, regardless of what discovery might reveal.[4]

---

[4] *See, e.g., Pilgrim*, 660 F.3d at 949 ("The problem for the plaintiffs is that we cannot see how discovery or for that matter more time would have helped them. To this day, they do not explain what type of discovery or what type of factual development would alter the central defect in this class claim."); *Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817, 833(N.D. Ill. 2013) (granting motion to strike class allegations because it was clear from complaint that "individual questions predominate, and accordingly that class certification would be inappropriate"); *Pumputiena v. Deutsche Lufthansa, AG*, 16 C 4868, 2017 WL 66823, *10 (N.D. Ill. Jan. 6, 2017) (finding that, when a class "could not possibly be certified," it was "appropriate to strike those class allegations at the pleading stage"); *Hovsepian v. Apple, Inc.*, No. 08-5788, 2009 WL 5069144, *2 (N.D. Cal. Dec. 17, 2009) (granting motion to strike class allegations, noting that "[u]nder Rules 23(c)(1)(A) and 23(d)(1)(D), as well as pursuant to Rule 12(f), this Court has

## CONCLUSION

For the reasons set forth above, Defendant respectfully requests that this Court dismiss Plaintiffs' Complaint in its entirety under Rule 12(b)(7) and Rule 19 with prejudice for failure to join all of the Consumers as necessary and indispensable parties, or, in the alternative, to strike Plaintiffs' class allegations under Rules 12(f) and 23 and permit each of the Named Plaintiffs to pursue their respective claims in their individual capacities.

Dated: June 20, 2025                     **PIERSON FERDINAND, LLP**

                                         *s/Daniel L. Messeloff, Esq.*
                                         Daniel Messeloff
                                         Irene Oria
                                         Gerald T. Hathaway
                                         Attorneys for Defendant
                                         1270 Avenue of the Americas
                                         7th Floor – 1050
                                         New York, New York 10020
                                         (917) 719-5698

---

authority to strike class allegations prior to discovery if the complaint demonstrates that a class action cannot be maintained.").

25