UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOHNNIE FLANAGAN, LAURA CHAPMAN,
individually and on behalf of other persons
similarly situated,

Index No. 6:25-cv-06225

Plaintiffs,

v.

**AFFIDAVIT**

PUBLIC PARTNERSHIPS, LLC,
Defendant.

**Johnnie Flanagan, under penalty of perjury, swears and states as follows:**

1. I am individual residing in New York State, and I have been a personal assistant to an individual consumer/patient in the Consumer Directed Personal Assistance Program ("CDPAP") since 12/19/2019.

2. I became employed by PPL on or about March 2025. When New York State required personal assistants to begin providing services to consumers in the CDPAP through PPL, as the State's sole fiscal intermediary, I did so.

3. I received training for the use of PPL's time-clock system. This system was supposed to conform to the Electronic Visit Verification requirements of federal and State law. I have had multiple issues with the system simply not allowing me to clock in and out. In addition, there have been a number of cases where – although I am able to log in and out of my shifts – the pay statements and compensation I receive does not equal all the hours of work I have performed.

4. I am paid hourly, so my compensation should be the sum of hours, multiplied by my

hourly rate. I am regularly "shorted" on compensation because PPL's system does not (1) "record" all of my hours of work, despite me correctly entering my work hours each week and (2) accurately calculate all hours of my work.

5. My consumer/patient is required to attest to my hours in PPL's EVV software, but the software malfunctions many weeks, as stated above. Thus, even though my consumer verifies that I have performed the work, Defendant's system – for reasons unknown to me – does not "register" or somehow recognize those hours. I know that their system is malfunctioning because I know how much hours I worked, and I am regularly paid less than the reported hours of work.

6. The underpayment is not the fault of my consumer patient. It is strictly the fault of PPL's technology.

7. The underpayment of my wages is also the fault of PPL's lackluster reporting systems and processes. I have called and emailed PPL multiple times in attempts to rectify these technology issues. No one ever calls me back or addresses these issues. Moreover, I am in touch with dozens of other personal assistant workers; they all have the same technology and system-caused underpayments of wages.

8. Any discrepancy between hours worked and hours paid was caused not by my or the Consumer's inaccuracy, but by PPL's Time4Care™ system automatically rounding down or omitting legitimate hours. My experience is typical of the class: each pay period, I lose hours of pay due to PPL's software settings, despite perfect compliance with the scheduling and certification process.

9. I never attempted to report hours outside my consumer's authorized service plan, and my work hours were always submitted correctly and on time. The shortfall in my paychecks

was not the result of any Consumer error; rather, it stemmed solely from PPL's automatic payroll algorithms. I understand that PPL contracted to handle all wage calculations and payments, and I relied on its system to process my certified hours accurately.

10. PPL's brief argues that Consumers "distribute" paychecks and therefore must share liability if pay is late or incomplete. I have never physically received a paycheck from my Consumer. All payments are made electronically by PPL under direct deposit, and my pay statements (which show which hours were paid) are available in PPL's payroll system electronically. I have never been asked by my Consumer to correct or disburse any payroll funds. PPL alone deposits my wages into my bank account.

11. And while PPL cites that Consumers would be distributing the checks, the fact is that PPL mails the checks to the personal assistants, not to the Consumers for distribution.

Dated: July 24, 2025
Albany, New York

By: *Johnnie Flanagan*
Johnnie Flanagan

State of New York

ss.:

County of Monroe

On the 22nd day of July 2025, before me personally came Johnnie Flanagan, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____

(Notary Public, State of New York)

Commission Expires: 09/04/2028

REBECCA B. WIESNER
NOTARY PUBLIC, State of New York
Monroe County, No. 01WI6268295
Commission Expires 9/04/2028